In the matter of the application of THE MAYOR, &c. OF THE CITY OF NEW-YORK, relative to the opening of *Seventeenth* street in the *twelfth*, late ninth ward of the city.

Where lots were sold in the city of N. Y. bounded on a space *called a street*, *having been designated as such by the* commissioners of streets and roads in the city of New-York, and such sale was had previous to the street being *directed to be opened by* the corporation of the city: it was held that the fee of the land comprised in the space called a street, did not pass to the purchasers of the lots, as it would have

AT the last February term, a report of commissioners of estimate and assessment relative to the opening of this street, having been presented to the court, and a motion made for its confirmation, objections were interposed by sundry persons, owning lots fronting on the street, who claimed, that as such owners, *they* were entitled to the compensation allowed for the ground to be occupied as such street, and that the same ought not to have been awarded, as by the report it was awarded to owners unknown. *Seventeenth* street is one of the streets designated by "the commissioners of streets and roads in the city of New-York," who were appointed by an act of the legislature, passed 3d April, 1807; by which act, the commissioners were authorized to *designate* the site *of streets, to be opened* in the future progress and improvement of the city. Such designation, however, does not constitute or create the street, so that it can be used as a street, until the proceedings are had which are now sought

done, had the lots been bounded on a public highway, but that the same remained in the grantor; that the owners of the lots had, however, a perpetual right of way over the space called a street, and an assessment having been made to the *full* value of the land required for the street, by the commissioners of estimate and assessment, their report was sent back for correction; which report, being subsequently corrected by an allowance of damages only for the *fee* of the land, subject to the right of way of the owners of the lots, was confirmed by the court.

to be confirmed, and such proceedings are approved by this court. The late William Bayard, of New-York, was the owner of a tract of land lying between the Warren and Fitzroy roads, which ran in a north-easterly direction from the Southampton road, and through which tract, three streets, viz. Fifteenth, Sixteenth and *Seventeenth,* were designated by the commissioners under the act of 1807, to be laid to run in a southeasterly direction from the Fitzroy road to the Warren road. In 1823, Mr. Bayard having had a map made of his tract, on which were laid down the streets as designated by the commissioners, caused the same to be opened in conformity to such designation, and sold a number of lots to the persons who now object to the confirmation of the proceedings of the commissioners of estimate and assessment, and executed deeds to them. The following is a sample of the manner in which the premises are described in the deeds, viz.: "Fourteen lots of ground in the ninth ward of the city of New-York, known and designated on a map caused to be made by the said William Bayard of a tract of land owned by him, as lots nos. 37, &c. bounded as follows: Northerly by *Seventeenth-*street, easterly by lots laid down on said map as lots no. 44 and 61, southerly by Sixteenth-street, and westerly on the other side by the Fitzroy road; the said lots containing together 180 feet six inches on Seventeenth-street, on the easterly side 183 feet eleven inches, on the southerly side, *fronting* on Sixteenth-street, 175 feet, and on the westerly side or Fitzroy road, 184 feet, be the same more or less." The deeds were with full covenants, and conveyed all and singular the tenements, hereditaments *and appurtenances whatsoever* to the premises belonging. There are 32 lots fronting on *Seventeenth* street, all of which, except two, were sold and conveyed by Mr. Bayard, subsequent to the time of his causing the street to be opened as aforesaid. It was proved that Mr. Bayard frequently declared, that the persons who purchased lots from him were to have all his interest in the streets, and would never have any thing to pay for the streets designated upon his map, as they were already open, and in consideration thereof, the purchasers paid an

enhanced price for the lots.    On the 30th July, 1827, the cor-
poration of New-York directed *Seventeenth-street* to be opened,
and commissioners of estimate and assessment having been
appointed, they proceeded to the discharge of their duties, and
estimated and assessed the loss and damage which would be
sustained by the owners of the ground required for the opening
of the street, at $——, and assessed the same upon the own-
ers of the lots fronting upon the street, about $170 upon each
lot, and upon the owners of other lands, conformably to the
directions of the statute relative to the opening and laying out
of streets in the city of New-York.

The report and objections to the same were submitted to
the court on written arguments.

*Arguments for the objectors.*    At the time of the sale and
conveyance of the lots, Mr. Bayard was as fully and legally
seized of the ground covered by the streets leading over his
tract of land, as of the lots themselves.    The acts of the com-
missioners in designating the streets, did not divest him of the
fee in the land.    The principle of the English common law,
(*Goodtitle* v. *Alker,* 1 *Burr.* 133,) is the law of this country,
and particularly of this state, in respect to public highways.
The state, or corporation, or public, (except in those cases in
which they have specially purchased the fee,) have only a
right of passage over a public highway, and the fee remains
in the owner of the adjoining ground.    The principle of the
English law has been repeatedly admitted to be the law in
this country.    (2 *Johns. R.* 363.    15 *Johns. R.* 447.    1 *Cow-
en,* 238.    2 *Mass. R.* 127.    6 *Mass. R.* 456, *Parsons, Ch. J.*
1 *Pickering,* 122.    1 *Conn. R.* 105.    1 *Yeates' R.* 168.    9
*Sarg. & Rawle,* 31.    4 *Greenleaf,* 95.    1 *New-Hamp. R.* 16.)

The fee of the streets to the centre thereof, opposite the
lots sold bounding on the streets, passed with the fee of the
lots to the grantees, and they, and not the representatives of
Mr. Bayard, are the lawful owners and claimants entitled to
the compensation awarded by the commissioners of estimate
and assessment.    The proof *aliunde* as to the intention of the
parties, may well be received in an inquiry of this nature, di-

rected by equitable considerations, and not controlled by technical rules. But, independent of this external proof, it is evident from the map which Mr. Bayard had caused to be made, and the deeds executed in conformity to it, that he regarded and treated the streets as *public highways.* It is immaterial as to the question of intention, whether the streets had been actually appropriated, at the time, by the corporation of N. Y., for public highways. They had been laid out as such by the commissioners under legislative authority, and their proceedings had received legislative sanction, and the corporation were authorized to carry their plan into execution. The corporation had no discretion in the case, to vary or alter the plan and streets as laid out by the commissioners. As fast as the populataion extended, and required new streets, the corporation were bound to adopt those very streets designated in the commissioners' map and surveys. Mr. Bayard never considered or treated the streets as *private ways;* he considered them to be public highways designated by law, and his intention to convey all his interest in the streets adjoining his lots, is as manifest as if they had already been opened, and used under the sanction of an ordinance of the corporation. The idea of an intention of withholding his interest in the streets for his own use afterwards, cannot be presumed. It would be contrary to universal practice. There is no instance to be found, said one of the judges in the great case of *Peck* v. *Smith,* (1 *Conn. R.* 103,) where the fee of a highway, as distinct from the adjoining land, was ever retained by the vendor of that land. No such estate was ever claimed or heard of, and it would be doing violence to the good sense and common understanding of the parties in this and in every case, to act upon so preposterous an assumption, unless there was an express declaration of such a purpose.

The established inference of law is, that a conveyance of land bounded on a public highway, carries the fee in the highway to the centre of it, as part and parcel of the farm. It will pass as *appurtenant* to the land. There are many cases in which lands will pass under the name of appurtenances, as parcel of the thing granted, when the intention is appa-

rent from the circumstances. The good sense of the doctrine, said Judge Story, in *Whiting* v. *Olney*, (3 *Mason*, 280,) is, that under the grant of a thing, whatever is parcel of it, or *necessary to its beneficial use*, or in common intendment included in it, passes to the grantee. Thus the grant of a mill does not mean merely the building, but includes the site, dam and other things annexed to the freehold, and necessary for its beneficial use. So in *Smithson* v. *Case*, (*Cro. Jac.* 526,) by the grant of *a messuage with the appurtenances*, the orchards, yards, curtelage and garden passed. Again, in *Bryan* v. *Wetherhead*, (*Cro. C.* 17,) by the demise of a tenement *with the appurtenances*, an adjoining building passed, when it had been reputed and accepted as parcel thereof. In *Doane v. Broad-street Association*, (6 *Mass. R.* 332,) a wharf and dock were assigned to A. with the privileges and appurtenances thereto, and it was held that certain *flats* passed as *appurtenant* to the wharf. So also in *Brick* v. *Norton*, (1 *Bos. & Pul.* 53,) Eyre, Ch. J. said, that *lands* would pass by the word *appurtenances*, if it appeared that a larger sense was intended to be given to it than the strict technical sense.

There must be some strong and express words of exclusion, or the interest of the owner of the adjoining land, in the highway on which it is bounded, will pass by a deed of the land. In *Jackson* v. *Hathaway*, (15 *Johns. R.* 447,) it was admitted in the opinion of the court, that where a farm was bounded *along a highway*, or *upon a highway*, or *running to a highway*, there was reason to intend, that the parties to the deed meant *the middle of the highway*. There is equal reason in the present case, to intend that the parties meant to go to the middle of Sixteenth and Seventeenth streets, when they described the lots as bounded northerly by *Seventeenth-street* or *by Sixteenth-street*, or *on Seventeenth-street* or *as fronting* on *Sixteenth-street*, and especially as the *appurtenances* were conveyed, and the limits were to be reached, be the dimensions *more or less*.

In the case of *Peck* v. *Smith*, already cited, (1 *Conn. R.*) there was a conveyance of a farm which had a public highway running through it, and the deed contained this remark-

able exception : "Saving and excepting the road or high-way, laid out, used and improved, running over the premi-ses." The majority of the court decided, that the fee of that, as of all other public highways, was in the owner of the ad-joining lands, and that the fee of the road passed to the gran-tee, *notwithstanding the exception.* The owners and purchasers of lands on each side, take the fee of the road to the centre of it, subject to the easement. Ch. J. *Reeves* held, that the own-er of the land could not sell the land and reserve the road, for it passed as an inseparable part and parcel of the adjoining land, and that it was inadmissible that the fee of a highway, subject to the easement, should reside elsewhere than in the owners of the adjoining lands. *Baldwin* and *Brainard*, J., and *Mitchell*, Ch. J., were of opinion that the exception was sufficient to retain the fee of the highway in the grantor. *Ed-mond*, J. was of opinion that the fee passed, notwithstanding the exception, which was intended only to save the applica-tion of the covenants of title to the road. He admitted that it had grown, by practice and universal understanding, into a rule of the common law, absolute and uniform, that the own-er of the adjoining lands was the owner of the fee in the high-way. *Trumbull* and *Swift*, justices, both agreed, also, that the fee in the road passed, notwithstanding the exception, and the latter held that it passed as *appurtenant* to the land. This case is submitted as great authority for the doctrine, that a grant of land always carries *ex vi termini* the fee in the highway on which it bounds, and that it would re-quire at least very express and decisive proof of an intention to retain it in the grantor, before any deed will be so constru-ed. If the deed can receive any other reasonable construc-tion, even an *apparent* reservation of the highway would not be sufficient.

The cases of deeds and patents bounded upon fresh water streams, afford a strong argument in favor of the claim to the street ; for the principle is the same in the two cases, and the analogy is perfect. A fresh water stream, if navigable at all, is generally a public highway. It is settled that where a person's land *abuts* upon or *adjoins* a river above tide

UTICA,
Aug. 1828.

Matter of Sev-enteenth st.

water, he owns the river to the centre of the stream, and it would require an express and unequivocal reservation in the grant, to prevent it. In *Claremont* v. *Coulton,* (2 *N. Hamp. R.* 369,) the lot bounded on Sugar river, and the court observed, that when a *stream* is mentioned as a monument, it is used as an entirety to the centre of it, and there the right goes. A variety of cases are cited to the same effect, in the interesting and learned note of the reporter in 6 *Cowen,* 544, and they demonstrate that if the grantee be bounded on a river, (no matter in what mode of expression,) he goes ad medium filium aquæ, without decided language, shewing a manifest intention to stop short at the bank or water's edge.

*M. Ulshoeffer,* for the corporation, insisted that this case was not distinguishable from that of *Mercer-street,* (4 *Cowen,* 542,) in which the court refused to confirm the report of the commissioners, they having allowed only a nominal compensation to the owners of the fee of the street, on the ground that they had conveyed the lots to purchasers bounding them on *Mercer-street,* as in this case on *Seventeenth-street ;* the court holding that the claimants were entitled to compensation, without regard to the supposed easement or right of way claimed by the purchasers of the lots. [Not having been furnished with a copy of the argument submitted by the learned attorney for the corporation, the reporter regrets that he is not able to lay the same before the profession.]

At the *May term,* the opinion of the *Court* was delivered by SAVAGE, Ch. J. as follows : A motion being made for confirmation of the report of the commissioners of estimate and assessment on opening Seventeenth-street, objections are interposed by sundry persons owners of lots, because they are assessed to pay for the street in front of their lots, as belonging to owners unknown ; whereas they claim to be the owners by virtue of their purchase of lots upon the street. The facts are, that the late William Bayard was the owner of about eight acres of ground, in the village of Greenwich, in the city of New-York, which he caused to be surveyed into

lots upon the streets and avenues, designated by " the com-
missioners of streets and roads in the city of New-York," ap-
pointed by the act of the 3d April, 1807. In the spring of
1823, he caused the streets to be actually laid open, as streets,
and appropriated to that use, and sold the lots now owned by
the objectors, with the exception of two lots, which were sold
previous to such actual opening of the streets. The convey-
ances are in the usual form granting the lots. Nothing is
said about the streets, except that the lots are bounded upon
them ; but it appears from other testimony that there was a
full understanding between Mr. Bayard and the purchasers,
that they were not to pay any thing for the streets. The
commissioners proceeded upon the ground, that as the con-
veyances of the lots contained no grant of the contemplated
street, nor any interest therein, the title therefore had never
been divested, and consequently remained in the heirs of Mr.
Bayard.

It is assumed by the learned counsel for the purchasers
from Mr. Bayard, that at the time of the sale of these lots,
Mr. Bayard was as fully seized of the ground covered by the
streets and avenues, as of the lots ; and also that the acts of
the commissioners, and the appropriation of the ground for
streets and avenues, did not divest him of the fee in the land.
In this I concur with him ; and, assuming these positions,
I cannot see how the fee of the land covered by the streets
could be vested in the purchasers of the lots. These streets
were designated by the commissioners as streets to be opened
in the future progress of the city, provided the corporation
or the proprietors of lots representing three-fourths of the
front of either of said streets should desire to have the same
opened. The act, (*sess.* 30, *ch.* 115,) provides, that in that
event, the corporation shall agree with the owner for a rea-
sonable compensation to be made to him for such lands, thus
to be appropriated as streets, and provides for ascertaining
such compensation in case of disagreement. In an ordina-
ry case of highways, the rule is, that the fee belongs to the

owner of the adjoining ground, and that the public have only a right of passage, an easement, and that a trespass will lie by such owner for any exclusive appropriation of the soil. (2 *Johns. R.* 363. 15 *Johns. R.* 452. 1 *Cowen,* 240.) But the streets in the city of New-York are regulated by a statute, which transfers the fee of the street from the former owner to the corporation of the city; in trust, however, that the same be kept open for a public street. (*Sess.* 30, *ch.* 115, *s.* 9. 2 *R. L.* 414.) By the latter act, the fee is not changed until the report of the commissioners of estimate and assessment shall be confirmed by this court. It is clear, then, that at the time of these conveyances, the grounds designated for streets were not public highways: they were private property, and belonged to Mr. Bayard, unless they were conveyed with the lots. And the question is, whether the conveyance of a lot bounded on a piece of ground called a street, but which is in truth not a street nor a highway, conveys the land to the middle of such contemplated street? I think not. I speak now of the construction to be given to the deed, independent of the declaration of the grantor, as to the extent of the grant. To determine the strict legal rights of the parties, I will suppose the whole property in an enclosed field, as it was shortly before the sale. Suppose the purchasers had enclosed their lots, and with them the half of the street, would they not clearly have been trespassers? Their justification would be, that they were owners to the middle of the highway; but the ground upon which they attempt to stand, slides from under them. There is no highway there. The ground, contemplated as a street, is still private property; and the purchaser must be confined within the bounds of his grant. The space called Seventeenth-street, as yet, is merely a boundary to determine the extent of the lots. It is said that the corporation had no discretion, but were bound to open these streets. If it were so, that would not vary the legal rights of the parties anterior to such opening. But I apprehend there is a discretion in the corporation and the owners of lots. If, indeed, streets are opened over the ground thus designated, they must be upon the

ground as designated by the commissioners. But the corporation are not obliged to proceed to open such streets, unless desired to do so by three-fourths of the owners of lots fronting on such streets, or such parts as is desired to be opened. The argument for the purchasers proceeds upon the ground that these streets are to be considered *public highways.* They certainly were not so, and cannot become such, but in virtue of the proceedings now pending. Although, therefore, the purchasers did not acquire the fee of any land not covered by their deeds, yet they did become entitled to a right of way over the lands of the grantor, from their lots to the public highways or streets ; and as Seventeenth-street was then opened and used as a public way, they became entitled to pass and repass upon it, either to the Warren road or to the Fitzroy road. (19 *Johns. R.* 186.) A right of way, therefore, upon the street now in question, belonged to the purchasers, particularly as it does not appear that they had access from their lots to any public way or street in any other manner. In this particular there is a striking difference between this case and the case of Mercer-street, ( 4 *Cowen,* 543.) There, the lots in question were bounded on one end on Broadway, and the other on Mercer-street, then unopened. We there considered Mercer-street (not being an open street or public highway) merely as a boundary. And as no right of way was necessary in that case, nor had any such right been claimed or exercised, the commissioners were directed to estimate the value of the street to the person claiming it, and not to the owners of the lots bounded upon it; but in this case the owners of the lots were entitled to a perpetual right of way over the street in question, and had paid, as a consideration for it, an enhanced price for their lots ; and as the *full value* of the street has been assessed, the report must be returned to the commissioners for correction.

*At this term,* a corrected report of the commissioners was brought into court, from which it appeared that the assessment was reduced to $600, about $12 per lot, and that such sum was allowed for *the fee of the land,* subject to the right of

UTICA,
Aug. 1828.

Matter of Seventeenth-st.

way of the owners of the lots fronting on the street.  Further opposition was made to the report, but it being in conformity to the principles of the decision made at the last term, when the report was sent back for correction, and the amount assessed being only nominal, the court confirmed the same.