[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 63 
The question presented for adjudication in this case is, whether the several deeds of conveyance executed by William W. Mumford, between the years 1828 and 1845, to different individuals, conveying lots on either side of Erie street, in the city of Rochester, carried the lands to the centre of that street. These deeds describe the lots invariably by their numbers; "reference being had to the allotment and survey madeby Elisha Johnson." In some cases the size of the lot is given: "being 33 feet front and rear, and 99 feet deep." There is no express mention of any street in any of the deeds. It appears that, before selling any of the lots, Mr. Mumford, the original proprietor of these lands, placed his map, or a copy of it, in the hands of agents engaged in selling his lots, and that they made sales in reference to the map. On this map the lands in controversy are laid down as "Erie street;" and these lots conveyed lie both on the north and south sides of "Eriestreet." The simple question, then, is, whether a conveyance of a lot bounded on a piece of ground thus laid out upon the map as a street, and called a street, but which is not, in fact, a public street or highway, carries the grantees to the middle of the street. The question, so far as it *Page 64 
is here presented, involves merely the construction to be given to these deeds. The inquiry is as to the extent of the grant.
If the rule of construction in regard to such grants is not to be considered as settled in this State, I am inclined to hold that the inference of law is, that such a conveyance carries with it the fee to the centre of the street, as part and parcel of the grant. There is no more reason, it seems to me, to infer an intention in the grantor to withhold his interest in or title to the land covered by the street, after parting with all his right and title to the adjoining land, than there is in the case of a deed bounded by a public highway.
I have not been able to discover any reason which can be given in the one case, which is not equally applicable to the other. The rule of construction is well settled in regard to a deed bounded by a public highway. The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the centre of the road as part and parcel of the grant. (2 J.R., 363; 15 id., 452; 1 Cow., 240; 3 Kent's Com., 433, 3d ed.) The rule seems to be based upon the supposed intention of the parties, and, it seems to me, upon a very reasonable intention. The idea of an intention in a grantor to withhold his interest in a highway to the middle of the street, after parting with all his right and title to the adjoining land, ought never to be presumed; and all the cases hold that, in such a case, it requires some declaration of such an intention in the deed to sustain such an inference. There is no reason for presuming a different intention in a case like the present. The grantor, Mumford, intended this as a street, and gave it the name of Erie street, and, as regards his grantees in these deeds, he dedicated it as a street, according to all the cases, whether the public ever accepted it as such or not. It was, as between him and his grantees, a street which they had a right to use as such, as soon as these conveyances were made by him. (1 Wend., 262, 427; 2 id., 472; 8 id., 85; 11 id., 486; 17 id., 650; 18 id., 411; 19 id., 128; 1 Hill, 189.) As regards the public generally, I admit it does not become a public highway until there has been an acceptance, either by formal *Page 65 
act of the public authorities, or by common user under such circumstances as show an intent to accept it. (Holdane v. TheTrustees of the Village of Cold Spring, 21 N.Y., 474.) This does not, in any manner, as I can perceive, affect the matter as between this grantor and his grantees. As between them and him, his conveyances, per se, dedicated it to their use as a street. I do not see, then, how, as regards these grantees, Mumford can be allowed to say it is not a street.
This being so, the rule of construction which should be applied to his conveyances is the same as if it were a public street, as regards the public generally. If, as regards these grantees, it is a street, and if, in his conveyances, he intended it as a street, as all the cases hold he did, I am not able to see why the legal inference, as regards his conveyance, is not the same as if it were a public highway. There is no more reason to presume the intention in the grantor in such a case to withhold his interest in the road to the centre of it, after conveying all his right and title to the adjoining lands, than there would be were this to all intents and purposes a public street. The question in each case becomes one of presumed intention arising upon the conveyance itself; and I am not able to perceive how it is possible to deduce a different intention in one case from that which, the law has settled, shall be inferred in the other. Did not Mumford, when he caused these lots to be laid out on either side of this street, and this street designated, named, and put down on the map, and these lots numbered, and when he conveyed these lots to purchasers with a reference to this allotment and survey, intend that this should be a street, by the name of Erie street? No one will pretend that he did not. Did he not, by selling these lots to purchasers with reference to this map and street, and conveying the lots to them on both sides of the street, thereby, so far as these grantees are concerned, dedicate this as a street? No one can claim to the contrary. All the cases affirm it. Did he not, then, in making these conveyances to these purchasers, intend to convey lands upon a street, so far as the grantees in these deeds are concerned, and did not these purchasers so understand *Page 66 
it? No one can doubt it for a moment. If such was the intention of the parties to these conveyances, then I am not able to perceive why the conveyance does not carry with it the usual legal inference that a conveyance bounded by a highway does, to wit, that it carries with it the fee to the centre of the road.
I certainly am not able to discover any more intention in the grantor to withhold, in these conveyances, his interest in the land covered by this street, than would be if the public authority had already laid out the street, and the grantor still held the fee subject to the easement. As between these parties, grantor and grantees, it is a public street to all intents and purposes, except that the public authorities are not bound to keep it in repair. It is made such by Mumford himself, in laying out the street and putting it upon his map, and selling these lots upon either side of it with reference to the map and street; and he has probably received the full value of the street in the increased price of the lots sold upon the street. (1 Hill, 190; 1 Sandf., 323, 346, 347; 17 Mass., 415; 4 Cush., 332; 8 Wend., 99; 17 id., 661; 6 Pet. U.S., 438.) If the views above expressed are correct, it follows that we must hold that these conveyances by Mumford carried the fee to his grantees to the centre of this street, unless this court shall feel constrained, in deference to the authority of the New York city street cases, to come to a different conclusion.
I have looked carefully into these cases, of which there are ten in number, and may be found in our reports, as follows: 4 Cow., 542; 1 Wend., 262; 2 id., 472; 8 id., 85; 11 id., 486; 17 id., 650; 18 id., 411; 19 id., 128; and 1 Hill, 189.
It cannot be denied that these cases seem to assume that a different construction should be put upon such conveyances in city lots bounded by a projected street. It is proper to remark, however, in regard to these cases, that they all arose on applications to the Supreme Court to set aside, or to confirm, assessments of damages on opening streets; and the question as between grantor and grantees does not seem to have been much considered. The discussion seems principally to have gone *Page 67 
upon the question whether the city should pay the full value of the lands on the ground that there was no dedication, or whether they should pay merely a nominal sum on the ground that there was a dedication of the street; and the court sustained the latter view.
Three of these cases were removed by writ of error to the Court for the Correction of Errors. In the first of those cases (Livingston v. The Mayor of New York, 8 Wend., 85), the Supreme Court had only awarded nominal damages to Livingston, and he having brought error, the court affirmed the judgment of the Supreme Court. As the corporation had acquiesced in the judgment of the Supreme Court, the question whether Livingston, having parted with his title, was not entitled to any damages, was not before the court; and this case, therefore, so far as the court of dernier resort is concerned, decides nothing as regards the question of title between grantor and grantee.
In the second case (Wyman v. The Mayor, c., of New York,
11 Wend., 486), the case came before the Court for the Correction of Errors precisely in the same manner, and the same question, and no other, was presented to that court; and the only question was, whether the grantor was entitled to more than nominal damages, and not whether he was entitled to that, for the city had acquiesced in the judgment of the Supreme Court, and they could not say, therefore, that the judgment for nominal damages should be reversed.
In the third case, which was that of Champlin v. Laytin (18 Wend., 411), the question under consideration was in no respect adjudicated by the Court of Errors; and all that was decided in that case is perfectly consistent with the view that the grantee in such cases takes to the centre of the street.
There is another consideration which should be taken into account in considering whether these cases are to be regarded as controlling authority upon the question before us, and that is, the grantee was not a party to the proceedings, and did not have his day in court to contest the issue; and, besides, those cases were not adjudged in a plenary suit or action *Page 68 
at law. The cases came before the court in a summary way, upon application to confirm, or set aside, the assessments, and ought not to be regarded as so high evidence of the law as judgments of the court pronounced after a full trial in an action according to the course of the common law. There is another, to my mind, very objectionable feature to these street cases, that is, they seem to have inculcated the idea that there was a different rule of construction to be applied in such cases to a deed of land in a city from what there is to such a deed in the country. Such a doctrine I affirm has no foundation in principle, and will not, I apprehend, find any favor with this court. These cases were most severely criticised by the distinguished counsel who argued for the defendant in Hammond v. McLachlan (1 Sandf., 323); and the Superior Court held these cases were not controlling authorities in that court upon the question under consideration. The same was again held in Herring v. Fisher (1 Sandf., 344), and in the case of Stiles v. Curtis (4 Day, 328), the Supreme Court of Connecticut held, in a precisely similar case to this, that the conveyance carried the fee to the centre of the street. It seems to me, in view of these considerations, that this court cannot be considered as constrained by anything said in these New York street cases from fully considering the question presented, upon its merits, and deciding it according to the real intent of the parties; and it seems to me that, for the reasons above, as well as for the reasons stated by Judge OAKLEY in Hammond v.McLachlan, that the judgment of the Supreme Court should be reversed and a new trial granted.
DENIO, DAVIES, JAMES, and HOYT, Js., concurred; SELDEN, J., expressed no opinion; COMSTOCK, Ch. J., and LOTT, J., did not sit in the case.
Judgment reversed, and new trial ordered. *Page 69