## DARIUS PERRIN *v.* THE NEW YORK CENTRAL R. R. COMPANY.

*Lots sold by Map are bounded by Centre of Street.*

Where lots are sold by number designated on a map of the plat, and by such map such lots abut on a strip of land described on such map as a "street," or "park," the purchaser of such lots is to be deemed as being bounded by the centre of said strip or "street."

Bockes, J.—The entire and exclusive appropriation by the Defendant of the premises in controversy, laid down on the map and there denominated "Park," was sufficient as a disseizin to entitle the Plaintiff to recover in this action (16 N. Y. 97; 24 N. Y. 655; ibid. 658; 25 N. Y. 526). The question here is whether the Plaintiff, in conveying the nine lots which abutted on the strip called "Park," by numbers, referring to the map, passed the fee in this strip to the grantees, in the same manner and to the same extent as if the strip of land had been dedicated by him as a street for the use of the adjoining lots. Had the strip been designated "Street" on the Plaintiff's map, instead of "Park," the case would be precisely that of Bissell *v.* The New York Central R. R. Co. (23 N. Y. 61), where it was held that as between grantor and grantee, the conveyance of a lot bounded upon a street in a city, carries the land to the centre of the street. This, too, was like the present case, where the strip sought to be recovered was open upon a public street at one end only, and the conveyances of the adjoining lots were by numbers referring to the map, without any mention of a particular reference to the street by name.

In the case cited, this Court held that Mumford (under whom Bissell claimed title), by his conveyances of the lots abutting on the strip designated "Street" on the map, passed the fee therein to his grantees; consequently, that Bissell could not recover against the Defendant, who had become sole owner of all the adjoining lots.

As has been already suggested, the only difference between the case cited and the one under consideration is, that in the former the strip of land sought to be recovered was designated "Street" on the map, and in the latter it was designated "Park." In fact,

is there any difference which should require a different judgment in the two cases? Bissell's case was made to depend on the intention of the grantor, to be determined from the conveyances themselves, considered in connection with the map, which, by reference, was made part of them, the location of the lots, and the use for which the strip of land in controversy was obviously set apart and dedicated.

So it was reasoned that it was intended as a street because so designated on the map, and was intended as a means of access from the public highway to the lots abutting on it, which had no other common approach, public or private, and that it materially enhanced their value. It was therefore decided that such strip was intended as a street for their exclusive use and enjoyment, so far as the grantees of the adjoining lots were concerned, and that, when the title to all the lots centred in one person, he was entitled to its exclusive possession against any claim the grantor could urge by way of action in ejectment. Let us now apply the reasoning adopted in that case, and which it seems was satisfactory to every member of the court who took part in its decision, to the one in hand.

The Plaintiff, with a view to place his lands advantageously and profitably in market, caused them to be mapped, laid off in lots, and the lots to be numbered. He left on the map a narrow strip, forty-three feet in width, opening at one end into the public street, and extending into the plat one hundred and ninety feet. On this he located nine lots, seven of which had no other access to the public street. Without the advantages afforded by such passageway, those seven lots would be comparatively valueless.

There was no indication on the map, on the ground, or in the deeds of the adjoining lots afterward executed, of an intention to leave this strip of land open and vacant for ornament. On the contrary, the inference must be directly the reverse, for its form and location rendered it inappropriate for that purpose; while it was needed and became useful and valuable as a means of access to the lots in rear of those fronting on public streets.

It is beyond controversy that this strip of land was to be left

open and vacant for the use of the owners and occupants of the adjoining lots, for all the purposes of a street, and there is nothing to indicate that the Plaintiff entertained any other or different purpose. Then, to adopt the language of Mr. Justice Mason in Bissell's case, " as between these parties, grantors and grantees, it is a public street to all intents and purposes, except that the public authorities are not bound to keep it in repair. It is made such by the Plaintiff himself, in laying out the street and putting it upon his map, and selling these lots upon either side of it with reference to the map and street, and he has probably received the full value of the street in the increased price of the lots sold upon it." It is urged that the designation of " Park " on the map was of controlling significance, against the intent that the dedication was for a street. The Supreme Court adopted this view. The learned judge at the circuit found and decided " that when the Plaintiff laid out and platted his tract, which included the premises in question, he intended the space of land in question to be what he has designated it on the map—a Park—and not a mere passageway, leading by and to the adjoining lots." This finding is based on the fact that he designated the strip of land " Park " on the map. What it was called I think is of very little importance, when its use and principal purpose is obvious beyond possible conjecture.

It cannot be denied that it was to be used as a passageway or street. This became a necessity from the location of the lots abutting upon it. This necessity rendered it inappropriate as a park; nor does it assume the strict definition of *park*, as platted on the map. A park is in its strict sense a piece of ground enclosed for purposes of pleasure, exercise, amusement, or ornament.

This strip of land was unenclosed, open to the common, and was intended so to remain. Nor was it set apart either for pleasureground, or for purposes of exercise, ornament, or decoration.

Its shape and situation was unsuitable for either purpose. It was opened *for use*, and *use alone*, and that was as a passageway or street.

This was its primary and chief design, and, so far as the case

shows, its only design. Although called a park, as we have seen, it was not a park, and its intended use as a street was as much beyond question as was the use of Erie street, in Bissell's case. The decision in that case must therefore control the judgment in this.

The judgment of the General Term and of the Special Term should be reversed, and a new trial ordered, with costs to abide the event.

All concur except HUNT and SCRUGHAM, JJ., who dissent.

Reversed.

JOEL TIFFANY,<br>State Reporter.