# SUPREME COURT.

## Charles Knox agt, The Mayor, &c. of the City of New York.

A complete and adequate remedy in cases of *nuisances*, in favor of all persons specially injured by them, when they are of a public nature, can be administered in this court unembarrassed by the technical rules prevailing upon the subject in courts of law.

Therefore, a tenant for a term of years—not being the owner in fee of the premises, may bring an *equitable action*, to abate a public nuisance specially injurious to himself, although, before the Code his only remedy, by way of action, would have been that of a special action on the case for the recovery of damages.

The public acquire only such an interest in land *appropriated by dedication* to the uses and purposes of a *street or highway*, as will entitle them to use it for those objects, and subject to that right, which is denominated an *easement*, the person or persons making the dedication, and those acquiring the property under them, *still retain the fee of the land.*

The land upon which Broadway, in the City of New York, at the junction with Fulton street, has been constructed, was *dedicated* by the owners for the uses and purposes of a public street. Therefore, neither the legislature nor the common council of the city, can authorize or sanction any appropriation of it, except for the purposes of a street, without obtaining the consent of or making compensation to the owners.

The construction of the *bridge* at the junction of Broadway and Fulton street in the city of New York (known as the Loew bridge) has necessarily appropriated for its support the land which the plaintiff is entitled to have maintained open and unobstructed, subject only to the right of the public to pass and repass over it, and temporarily to occupy it for the improvement and more perfect enjoyment of that right, and special injury having been occasioned to him in consequence of it, he has a right to insist upon the *abatement and removal* of such bridge, as a *public nuisance.*

But he cannot recover in this action the *damages* he has sustained by reason of such injury, because he did not present his claim to the comptroller of the city for adjustment, as he was required to do by the statute, before he commenced the action.

*New York Special Term, June,* 1868.

THE plaintiff brought this suit as an action in equity for the removal and abatement of what he complains of as a public nuisance, specially injurious to himself. It appears from the complaint, as well as the evidence given on the

trial of the action, that the plaintiff is lessee for a term of years of the premises affected by the structure complained of, and that he has erected upon them a valuable building at an expense of $75,000. This building is situated upon the northeasterly corner of Fulton street and Broadway, and has been and is now occupied in part by the plaintiff as a store and in part it has been leased out to and occupied by his under tenants.

HAMILTON W. ROBINSON, *for plaintiff.*
ANDREW J. ROGERS, *for defendant.*

DANIELS, J. In the outset of the trial, the defendant objected that the plaintiff could not maintain this action for the abatement of the structure in controversy as a nuisance, because he did not own an estate in fee in the premises affected by it, and authorities were produced showing that such was the rule which prevailed in courts of law upon this subject. Under that rule, the plaintiff's remedy at law, as a tenant merely, would be that of a special action on the case, as it was called before the Code, for the recovery of damages. And such actions could be brought if the plaintiff should prove to be entitled to maintain them from time to time, as the damages he might sustain would justify a resort to them during the continuance of the cause producing them. Under that rule he would be bound to submit to the continuance of the wrong for such time as his interest in the leasehold premises continued, if the public authorities should maintain it as long as that.

The only other remedy open to him, would be that enjoyed by him, in common with every other member of the community, of indicting the defendant for a misdemeanor committed by the act of erecting and maintaining a common nuisance, and that would be subject to embarrassments and obstacles that it is not now necessary to enumerate. It is sufficient to say that he was not bound to resort to that

proceeding even if the structure in controversy could be clearly established to constitute a common nuisance. The fact that he could, as a tenant of the premises which it is complained are injured, maintain only actions at law for damages, and that such actions would have to be from time to time repeated, as the damages might continue to accrue, without resulting in the removal of the structure itself, is sufficient to entitle the plaintiff to bring his action in this court as a court of equity. It is so for three reasons. First, that he has no adequate remedy at law; secondly, to prevent a multiplicity of actions; and thirdly, to prevent irreparable injury by the continuance of the nuisance itself. (2 *Story's Eq. Jur.*, sec. 924 ; *Spencer* agt. *London and Birmingham R. R. Co.*, 8 *Simons*, 193 ; *Sampson* agt. *Smith, id.*, 272 ; *Ripon* agt. *Hobart*, 3 *Mylne and Keen*, 169 ; *Catlin* agt. *Valentine*, 9 *Paige*, 575.)

A complete and adequate remedy in cases of nuisances in favor of all persons specially injured by them when they are of a public nature, can be administered in this court unembarrassed by the technical rules prevailing upon the subject in courts of law. And if the complaint made by the plaintiff shall prove to be well founded he has presented such a case, as for the reasons already mentioned may be properly redressed by this court as a court of Equity.

The structure which the plaintiff in this action alleges has been erected, and is now maintained by the defendant in violation of his rights as tenant and occupant of the premises mentioned, is a bridge elevated at the heighth of eighteen feet over the junction of Fulton street and Broadway. This bridge is reached by stairs provided for that purpose at each of its corners, resting upon the sidewalk on Broadway. They extend to such a distance along the sidewalks from the sides of the top of the bridge as to afford proper means of ascending to, and descending from the bridge itself. In front of the plaintiff's store the sidewalk is thirteen feet in width, and the stairs to the bridge have

been so constructed as to occupy just one-half of this space. The northeasterly stairs ascend from the walk to the bridge across a considerable portion of the front of the store occupied by the plaintiff, obstructing the free passage of the light into the store and rendering the rear portion of it so dark as to require the gas to be lighted, for a part of the day at least, in order to enable the plaintiff to carry on and transact his business. The evidence also quite satisfactorily showed that the upper portion of the building, which the plaintiff had previously leased for offices and other similar purposes, had been so far injured by this bridge being in front of them, and the obstruction to the approaches to it caused to pedestrians passing along the walks, that they had been deserted by the tenants, and he was unable to procure others to occupy them. And in addition to that, the persons who passed along the streets at this point, on account of the diminished capacity of the sidewalk by the erection of the stairs to the bridge, blockaded the front of his store, rendering it inconvenient for goods to be taken to and removed from it and for his customers to pass in and out, and frequently driving the persons collected upon the walk through the inside of his store for the purpose of passing and repassing between Broadway and Fulton street.

No reason exists under the evidence given for doubting the truth of these statements. And assuming them to be true, as the court is bound to do, even though they may be somewhat colored, they exhibit such a clear case of special injury to the plaintiff as will enable him to maintain the present action, if the structure complained of can justly be declared to be a public nuisance. To constitute such a nuisance it is necessary that it shall be shown to have been erected and maintained in violation of law, and that it shall be found to render the enjoyment of the rights obstructed by it inconvenient, unwholesome or uncomfortable. On account of the large amount of travel upon the streets and on the walks at this point the former frequently became so

completely obstructed and blockaded by vehicles as to render it impossible, for the time being, for pedestrians to effect a crossing; and when that was not the case, crossing these streets by persons on foot was frequently difficult as well as dangerous. It was to relieve pedestrians from these interruptions and dangers that the defendant erected and has since maintained this bridge. When the streets have been very wet and muddy, and in the winter season, when the melting snow or ice has rendered a passage over them troublesome and difficult, then the evidence shows that this bridge has been used, but even then, not to such an extent as to justify the conclusion that it has afforded any great or substantial relief to the walks themselves, or the persons using them. Even at those periods the bridge does not appear to be used to such an extent as to accommodate a number of people equal to that which the stairs obstruct by contracting and reducing the capacity of the walk. During the ordinary weather which prevails, a much smaller proportion of people make use of it, and for much of the time, its chief purpose seems to be that of affording convenient accommodations for persons desirous of observing the movements upon the streets.

The obstacles interposed by the stairs themselves to the free and unobstructed use of the sidewalks, at all times, are much greater than the convenience and facilities afforded to persons using them by the bridge. The latter, therefore, constitutes a positive obstruction to those who are entitled to the enjoyment and use of the sidewalks at this part of the city, instead of adding to or promoting their convenience. And such appears to be the manner in which it is commonly regarded, for pedestrians seem to prefer encountering the delay, difficulty and danger of crossing upon the surface of the streets themselves, to the performance of the labor required to make a combined ascent and descent of thirty-six feet, for the purpose of securing freedom from these obstacles by crossing over the bridge. Of the two, the journey

over the bridge, in the judgment of those using the walks, appears to be regarded as the most difficult to be made.

For these reasons, the bridge is not such a structure as can, in any proper or legal sense, be pronounced an improvement promoting the convenient use and enjoyment of the streets. It not only impairs the value and usefulness of the adjacent property, but beyond that it renders it exceedingly inconvenient to use it for some of the ordinary purposes of business, and deprives pedestrians of thirteen feet of sidewalk that previous to its erection was capable of being freely used by them, without affording or providing them any corresponding or adequate advantage for the obstacles placed in their way. It is attended with those consequences, therefore, which, in a legal sense, constitute a public as well as a private nuisance. But whether that can be held to be its legal character, will depend entirely, upon whether it was properly and lawfully placed there.

The land upon which Broadway, at this point, has been constructed, was shown upon the trial to have been dedicated by those under whom the plaintiff has derived his estate for the uses and purposes of a public street. In this respect, it differs from many of the streets of the city where the fee of the land was in the public at large, and by legislation was afterwards transferred to the city, and also from those streets to which the city acquired title in fee by proceedings taken for opening them. In these cases the streets may be devoted to many public purposes that would be entirely unwarrantable and unjustifiable where a simple dedication of the land for the purposes of a street was all that had taken place. Hence, in the former, the legislature of the state may authorize the construction of railways over the streets, without the consent of and without compensation to the adjacent owners of property. (*The People* agt.*Kerr*, 27 N. Y., 188.) While in the latter case, neither the legislature nor the common council of the city, can authorize or sanction such an appropriation of the street, without obtaining

the consent of or making compensation to such owners. (*Williams* agt. *The New York Central R. R. Co.*, 16 *N. Y.*, 97.) In this case, it was held that the legislature had no such authority over the public streets of a city, as would permit it to authorize such a use of them. This authority also holds, that the public acquire only such an interest in land appropriated by dedication to the uses and purposes of a highway as will entitle them to use it for that object. And subject to that right, which is denominated an easement, the person or persons making the dedication, and those acquiring the property under them still retain the fee of the land.

For this reason, persons improperly appropriating or using the street for purposes not legitimately appertaining to it as a street, may be successfully prosecuted by the owner of the fee, subject to the easement, and made to respond for the act in damages, or to surrender the property itself, as the particular case may require. The right which the public acquire by means of the dedication and the acceptance of it, is that of using the land simply as a street and for nothing whatever beyond that. Incidental to this, and as a necessary part of it, the public possess the right of rendering the street as convenient, useful, commodious, safe and wholesome, as it can be by means of such improvements and regulations as experience has discovered to be adapted to those ends. To accomplish those results it may be graded, curbed, paved and sewered, and provided with the requisite gas and water pipes to light and clean it; and the manner in which excavations may be made or maintained in or under it, may be suitably and safely controlled by the public authorities having charge of the easement for the benefit of the public. But all this is done and permitted for one end and purpose, and that is, to render the streets as convenient, safe, useful and wholesome as they may be, for those having occasion to use them for the purpose of passing over them. Many other improvements in this respect may and undoubt-

edly will be discovered and made to increase the safety and facilities of the public in the use of the streets, but it may very well be questioned whether experiments like the one in controversy will be found to have sufficient tendency in that direction to justify a repetition of it.

Beyond this right of improving and regulating the manner in which the streets may be used, where the public have acquired only the easement secured by the dedication, the public have no right to make use of the land over which the streets may be lawfully maintained and preserved. It was claimed upon the trial that the provisions in the early charters conferred upon this city, would authorize a more unrestricted use than that of the land devoted to the purposes of a street. But even if these statutes were themselves capable of being so construed, which certainly would admit of very great doubt indeed, such a construction could not be sanctioned at the time when this bridge was erected, for the constitution of this state had long before that intervened with its potent injunctions that no person should be deprived of his property without due process of law, and that private property should only be taken for public purposes by properly and justly compensating the owner for it. (*Constitution of* 1822, *article* 7, §§ 1, 7; 1. *R. S., fifth edition,* 44, 45.) And these provisions have been prominently placed in the constitutions formed in this state since that time. The interest which the owners of the fee had in the land dedicated to the use of the street was property in the legal as well as popular signification of that term, recognized and protected as such, the same as the other property of the owner, by the laws of this state, and therefore within these constitutional provisions. And even if the statutes previously existing within the city were of themselves so comprehensive as to allow the owner to be deprived of it without compensation and without due process of law, as long as the right secured by them was not resorted to or in any manner rendered available, until after these constitutional

limitations had prohibited that from being done, they will not and cannot in any manner impair the rights of the owner in this respect. Those rights are now and were when this bridge was erected within the restrictions imposed upon the public authorities by these salutary provisions of the constitution. And it was not therefore within the power of the common council or of the legislature, or both combined, to deprive the defendant of them, unless the measures for doing so were taken in conformity to its requirements. Those measures only could be effectual in this respect which would provide compensation for the property taken or would result in the assent of the person entitled to its enjoyment.

. Without one or the other, the act of appropriating the property in question would necessarily be illegal and unjustifiable, if it has imposed an additional easement or burden upon the property beyond that included in the dedication. If that be its character, the provisions of the act of 1866, authorizing a certain amount to be raised by taxation for the purpose of paying for the erection of the bridge, would not deprive the plaintiff of any of his rights for redress on account of it. (*Laws of* 1866, 2,060.) An act of the legislature is not of itself due process of law within the contemplation and meaning of the constitution. And this act provided no compensation for the owner whose property has been rendered subservient to the maintenance of this structure. .

An attempt was made on the part of the defendant to show that the present plaintiff consented to the erection of this bridge, but no evidence was given which warranted that conclusion as a matter of fact. The right of the owner of this corner to the fee of the land in the street, subject to the easement of the public, has been acquired by the plaintiff by virtue of the lease executed and delivered to him. That bounds the land leased on the street, which by a well settled rule of construction extended the line to

the centre of the street. *(Bissell* agt. *the N. Y. C. R. R., Co.*, 23 *N. Y.*, 61; *Perrine* agt. *same*, 36, *N. Y.*, 120.) The plaintiff, therefore, is legally entitled to complain of this, if it has imposed a new burden or servitude upon his land in the street beyond that devoted to the use of the public, which in substance was one of passage merely.

This bridge is a structure permanently erected over the streets, appropriating for its support and the avenues to it thirteen feet in the aggregate of that part of the street which had been devoted to the use and convenience of pedestrians. It was not done for the purpose of improving the easement upon and over the land itself, which the public were and are entitled to enjoy; and it has no tendency whatever to produce any such improvement, but for the purpose of creating a new and distinct servitude, above the streets and above the land upon which the public easement was created. The fact that a portion of the street has been exclusively devoted to the support of this structure, is sufficient to show that it can be no development or improvement of the pre-existing easement, for that actually deprives the public of the use of so much of the easement itself as the bridge requires for its own support. If the appropriation of a portion of the street or sidewalks can be justified for this purpose, it may also be for the support of any other device that can be made useful in transferring persons from one side to the other side of a blockaded or crowded street. If the object in view is sufficient to justify the exercise of the power, it may be used in any manner that either ingenuity or fancy may suggest. And if a bridge is found to fail in fulfilling the expectation in this respect of those who designed and erected it, a hoisting apparatus with cranes and engines for its use, may be substituted in its place. And this may be done not only where the streets are liable to become blockaded and dangerous, but whenever that condition may be reasonably apprehended. If this may be done, nothing would appear to be

in the way of a raised walk, not only across, but along the streets themselves. The power over the streets that will authorize and sanction one will permit the existence of the others. If it could be sustained, it is capable of being used in such a manner as not only to seriously impede and impair the public utility of streets as avenues for travel, but beyond that it would be in danger of rendering them not only annoying but useless to those who should endeavor to carry on business upon them.

Within the well settled principles of law applicable to the government and improvement of public streets, no such erection as the one complained of can constitute a proper exercise of the power over them that has been confided to the public authorities. It is so entirely unadapted to the improvement or enjoyment of the street, as to be incapable of promoting the utility of the easement which the public have in it, in any respect whatever. On the contrary, it is a permanent obstruction, in the way of existence and enjoyment of the easement, and to that extent deprives the public of the use of that which has been dedicated and designed for their convenience and accommodation. As such it is a public nuisance, which may be and should be abated and removed. (*People* agt. *Cunningham*, 1 *Denio*, 524 : *People* agt. *Vanderbilt*, 28 *N. Y.*, 396.)

And as the structure has necessarily appropriated for its support the land which the plaintiff is entitled to have maintained open and unobstructed, subject only to the right of the public to pass and repass over it, and temporarily to occupy it for the improvement and more perfect enjoyment of that right, and special injury has been occasioned to him in consequence of it, he has made out and sustained his right to insist upon such abatement and removal. He cannot, however, recover in this action the damages he has sustained by reason of such injury, because he did not present his claim for them to the comptroller for adjustment, as he was required to do by the

statute, before he commenced the action.    ( *Laws of* 1860, *p.* 645, § 2.)

If the action had been for their recovery alone, it would have been plainly within the language of this statute.    The fact that further relief of an equitable nature has been also demanded, cannot have the effect of excluding from the operation of the statute that which would otherwise have been so plainly within it.    The plaintiff must have judgment directing the removal or abatement of this bridge as a nuisance, within ninety days after service upon the proper officer of the defendant of a certified copy of the judgment, without prejudice to the plaintiff's right to maintain an action at law for the recovery of the damages sustained by him.    As both parties have succeeded in part, neither is entitled to recover costs as against the other.