# HENRY A. MOTT AND OTHERS *v.* THADDEUS P. MOTT AND OTHERS.

*Easement — union of servient and dominant estates — grant of lot on street — fee to center, when passes.*

Where a right of way over a private street or lane exists in favor of the several lots fronting thereon, and all such lots are subsequently acquired by one person, the easement is thereby extinguished.

Where the owner of land conveyed lots fronting on a private lane, the deed describing them as running "to the side of a lane twenty feet wide, thence along the same," and then providing "and also the privilege of using from time to time and at all times hereafter * * * the said lane," the grantee to pay his proportional part of the expenses of keeping the lane in repair, *held*, that there was no intention in the grantor to reserve to himself the lane, and that one acquiring title to all the lots fronting thereon became the owner thereof in fee, and was entitled to devote the same to any use he might think proper.

APPEAL by Frederick H. Cossitt, from an order of the Special Term requiring him to complete his purchase of certain lots.

Under the decree of this court in the main cause, the lands whereof Dr. Valentine Mott died seized were sold, at public auction, in April and May, 1874, by Henry A. Mott and John Chetwood, executors of his will, and James McQuade, united with them as referee, sales being made by city lot numbers as shown upon maps, published and circulated at the sale.

The petitioner, Cossitt, purchased several parcels. The aggregate of the several purchases was $93,050, and Mr. Cossitt paid ten per cent thereof, and the auction fees, and obtained one receipt therefor, and signed one memorandum at the foot of the terms of sale, which however expressed that the lots were sold in separate parcels. He refused to pay the remainder of the purchase money and complete his purchases, claiming that Dr. Mott was not seized of the "fee simple to a strip of land twenty feet in width," stated to be "a lane or right of way, originally laid out by the heirs of Charles Ward Apthorpe, deceased," and not to have been conveyed in fee simple by the deeds executed by them. And he stated as the objection respecting the lots numbers thirteen and four, that there was no title to these lots. No other defect or objection was alleged by him, but it was claimed that his purchases were of an entirety, and that the objections alleged against the title of the lots covered by the lane, and of numbers four and thirteen, were sufficient to relieve him from the purchases of all the parcels.

The lane in question crossed or touched the lots numbers seven and eight, and those lots only. And upon the same map the lots numbers four and thirteen, also objected to, appear as sections of the westerly half of Bloomingdale road. The sale map, a copy of which was annexed to the answer, did not exhibit the twenty foot lane.

By deeds executed to him by Samuel Oakley in 1833, and by Thomas D. Carpenter in 1834, it is conceded that Dr. Mott acquired perfect title in fee simple to all the lands adjoining the lane throughout its extent. And thenceforward he was in undisputed possession of these lands, and also exercised sole dominion and control over the lane itself, keeping it in fence and repair, using it at pleasure for pasturage and other purposes, maintaining locked gates across it, extending it through his own land to the river, and collecting tolls for business use of it.

The purchaser claimed that Mott never acquired the title in fee simple to the strip of land twenty feet in width, running from east to west across the premises purchased by him, and in proof thereof, produced the deeds from the heirs of the original owner, Charles Apthorpe, to the grantor of Mott. In one deed made in 1799, the boundaries of the premises conveyed, so far as they affect this question, are as follows: " Thence south twenty-eight degrees thirty minutes west, nine chains seventy-five links to the side of a lane twenty feet wide; thence along the same south fifty-eight degrees east, ten chains sixty links to the Bloomingdale road; thence along the said road north twenty-eight degrees thirty-nine minutes east, nine chains seventy-five links to the place of beginning."

This deed also contains the following provisions: "And also the privilege of using, from time to time, and all times forever hereafter, with servants, laborers, horses, oxen, cattle, wagons, carts and carriages, as well the said lane leading to Striker's as the lane of twenty feet wide on the said map particularly delineated; the said David M. Clarkson, his heirs and assigns, always bearing and paying in common with the heirs of the said Charles Ward Apthorpe, and their heirs and assigns, his, her or their proportional part of the expenses of keeping the said lane leading to Striker's and the said lane of twenty feet in proper repair."

And in the second deed the boundaries of the premises, so far as they affect this lane, are as follows: " Thence along the same (the Bloomingdale road) north thirty-two degrees east, five chains forty-two links to a lane on the south side of Clarkson's land; thence north fifty-five degrees west, twenty-three chains forty links to Hudson river; thence," etc.

*Charles Jones*, for the appellant.

*C. A. Hand*, for the respondent.

BRADY, J.:

The testator, Valentine Mott, was, during his life, the owner of the land on both sides of the lane from beginning to end, which forms part of some of the lots bought by the petitioner, and had been in possession thereof as owner for more than thirty years prior to

his death. The lane was an easement created for adjoining owners, and as between them it could not be changed in its character or design. When the several owners yielded their estates bordering upon it, they centered in one person; the servient character was subject to his will. He might use it or not, for the purpose originally designed, as he thought proper. It was not a public but a private road or lane, leading from the Bloomingdale road to the Apthorpe or De Peyster mansion, and when the earlier grantors regarded and protected it by provisions in the deed, it was not to reserve in themselves, or their heirs, any estate in it, but to secure it as a necessary way or easement for the benefit of the owners along its line. This is evidenced by the provision contained in the deed from Charles Apthorpe to Clarkson, to the effect that the latter would always bear and pay, in common with the former and his heirs and assigns, the expense of keeping the lane in proper repair.

There can be no doubt that when property thus conveyed is united in one person, even though several parcels are described as commencing at or running to the side of the private road, or lane, the fee to the center of the way passes from the grantors. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y., 61; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id., 120; *Corning* v. *Gould*, 16 Wend., 531.) To hold otherwise would, in effect, be to declare that a man could not close a private road or lane running through his land, although it was made with express reference to and for such land, and although he has secured by grant the use of it in perpetuity, and although it formed a part of the estate to which it was an incident.

The original grantors could not claim any interest in the bed of the land or private road, because it is evident that the grants by them were not intended to withhold the absolute title to the center of the lane or road, except so far as to secure the use of its bed for the purpose mentioned, as long as the several owners required it. Questions of boundary are to be determined by the palpable intention of the parties as it appears from all the circumstances. (*Perrin* v. *N. Y. C. R. R. Co.*, *supra*.)

The sale of the adjoining land, by the several owners, was a surrender of the right and an abandonment of the use of the lane to the grantee, to be employed by him or not as he pleased. (*Bissell*

v. *N. Y. C. R. R.*, *supra*.) The purchase of the whole land adjoining made the purchaser master of the whole tract. He became the owner of the whole of the dominant estate to which the servitude or easement was due. (Case *supra*.) He closed the lane and used it as a pasture ground, and rented the use of it. If a right of way be from the close of A. to the close of B., and both closes be united in the same person, the right of way as well as all other subordinate rights and easements, is extinguished by unity of possession. (3 Kent, 423 [marginal paging].) In the case of *Bissell* v. *N. Y. C. R. R. Co.*, in which it appeared that the grantor had laid out a plot of land in lots and a street, which was used as access to them, the lots being bounded on the street, Justice MASON said : " There is no more reason, it seems to me, to infer an intention in the grantor to withhold his interest in or title to the land covered by the street, *after parting with all his right and title to the adjoining land*, than there is in the case of a deed bounded by a public highway." Indeed the object of the reservation considered in this case with regard to the intention of the grantors gathered from the surrounding circumstances, appears to have been only to secure the use of the lane for the owners on its line so long as it was necessary for or demanded by them, and it is not well to be questioned that there is no distinction to be drawn between the lane under consideration, and the street in the case of *Bissell* v. *N. Y. C. R. R. Co.*, which was used for a purpose similar to that which caused the laying out of the lane. The object secured by it has ceased, both as a convenience and necessity, and there is neither of these elements in favor of the continuance of it.

Why should the grantors, having parted with all the adjoining land, be permitted now to claim a fee in the bed of the land, against the undoubted intention of the grants to part from all interest in it when they sold the adjoining land?

Is it not clear that, as between themselves and their grantees, they intended to convey to the center of the lane, as declared in *Bissell* v. *N. Y. C. R. R. Co.?* These interrogatories seem to admit of but one answer. The objection discussed is therefore of no avail to the petitioner.

The further objection to the title to lots four and thirteen, forming part of the Bloomingdale road, proves valueless, because the

respondent did not sell any more than the right, title and interest of the testator and his representatives in them. They claimed an interest in them under a conveyance and the provision of the act of 1867 (chap. 697), granting the fee of the road to adjoining owners, and it was that interest which the petitioner bought. He was bound by his bid. If he desired to know what the interest was, the information should have been demanded at the sale. Having chosen to buy, without that or an examination for himself, he takes the consequences.

It is manifest that the order made at Special Term was correct, and it must be affirmed.

Davis, P. J., and Daniels, J., concurred.

Order affirmed.