By the Court, Robertson, Ch. J.
The space under the highway known as Mercer street, wherein the vault in question was built, was in the possession of the defendant as part of the soil or land, as much as if it had been a room in a building. It was not a mere easement. The ownership of soil extends downwards and upwards, from the surface as much as it does over the mere superficial area, and may be subdivided horizontally as well as perpendicularly. Being, therefore, land itself, carrying with it all the fruits of dominion, and not a mere right to the use temporarily or permanently of it without occupation, for the benefit of another piece of land, it could not be such an appurtenance as to pass by the mere conveyance of the latter.
The defendants’ title to the occupation as claimed by him, rested on permission granted by a street commissioner of the city of New York, to Mm personally to build such vault in front of premises on Mercer street, subject to the provisions of certain ordinances of the common council therein referred to, and set out in the case. By the first section of those ordinances, the commissioner is empowered to give permission to build vaults in the streets. This was entirely a *203 personal license, and probably constituted the defendant a mere tenant at will of the city corporation, if they owned the fee of the street, or a trespasser, if it belonged to any one else. There is no evidence that it belonged to the plaintiff. Indeed, the conveyance to him, under which he claims, excludes the street by bounding the land conveyed by its easterly “line.”
Nor was the vault in any way annexed to the plaintiff’s buildings. They were, in fact, separated by that part of the street, which constitutes what is called “ an area.” It is' true, the entrance into the vault was opposite a door in the building, so as to make a direct passage to it, but it might as well have been a passage to a vault opposite adjoining buildings. There is nothing to make such vault an appendage to the house in front of which it was^ except the fact of so fronting it. The jury even found that such vault was neither “necessary to the proper and reasonable enjoyment under the lease of the building erected by the defendant” nor “ an ordinary and customary addition to buildings in the city of New York, similar to” such buildings. So that even if the defendant’s covenant to quit arid surrender “ all additions and improvements ” to such premises, could be extended beyond the building which he covenanted to erect, or other structures erected on the' demised premises, it would not include such vault so as to enable the plaintiff* to enforce such covenant in this action. The arbitrators were, for the same reason, right in excluding such vault from the buildings valued by them under the covenant in the lease.
I do not think the practice of the corporation in confining their permits to build vaults to the owner or occupant of, or other person representing the premises back of it, as proposed to be proved on the trial, could make it in law an appurtenance to the building, whose tenants used it. If the defendant obtained an advantage by virtue of his position as lessee, which would benefit the enjoyment of the *204 land, and if retained by Mm after the lease ended, might-prejudice such use, he may possibly be bound in equity to transfer it. In such case the plaintiff claiming equity would be bound to do by contributing a proportionate part to the expense of obtaining such benefit, including the fee for the license and the cost of building the vault, because he cannot claim it as being affixed to the soil of his land or an appurtenance thereof. No offer to do so is made in this action, and it is not framed for such relief.
For these reasons the judgment and order denying a new trial should be reversed, with costs to abide the event.
Garvin, J. concurred.
Barbour, J.
To entitle the plaintiff to succeed in this action, it was, of course, necessary,.that he should establish his ownership or right of possession, upon the trial. The question whether the defendant has but an imperfect title or right, or even none at all, is, therefore,quite unimportant so far as concerns this appeal.
The evidence does not show that the plaintiff is the owner of the land upon which the vault is constructed. It, probably, belongs to the city of New York, in fee. (See ex parte Mayor, &c. Matter of Mercer street, 4 Cowen, 542. Matter of 17th street, 1 Wend. 262. Bartow v. Draper, 5 Duer, 130. People v. Kerr, 27 N. Y. Rep. 188. 1 Hoffman’s Tr. 368.) It is sufficient to say here, however, that although' the complaint alleges that the lessors,'at the time of the execution of the lease, were seised of the two lots “ bounded westerly by Mercer street,” thus averring by implication, perhaps, that the premises extended to the center of that street, yet the deed in partition to the plaintiff himself/ conveying to him the lot No. 539, makes the westerly line of Mercer street the western boundary of the lot. The ownership of the plaintiff, therefore, is limited by the line *205 of Mercer street, and cannot be extended to the filwn ad medium via, by implication or otherwise. (Jackson v. Hathaway, 15 John. 447. Jones v. Cowman, 2 Sandf. 234. Bartow v. Draper, 5 Duer, 130. Child v. Starr, 4 Hill, 369. 3 Kent’s Com. 434.) Even if we may assume, therefore, that the seisin of the executors covered the land on which the vault was built, and that the defendant was bound by his covenant in the lease to return it to them at the end of his term, it is quite clear that the plaintiff cannot sustain this action as the owner, in severalty, of such land.
But the plaintiff claims, upon this argument, that irrespective of the question as to the ownership of the land, he is entitled to recover the possession of one half of the vault for the reason that it was constructed and used by the defendant, during his tenancy, as an appurtenance of the building erected by him under the lease, and because, also, the license granted to the defendant by the street commissioner was, in effect, an easement running with, and appertaining to, the adjoining premises belonging to the plaintiff, and for his benefit as such owner.
The mere fact that the vault was built and used as an appurtenance of the house erected by the defendant, gives the plaintiff no right to the possession of such vault upon the termination of the lease. A tenant under a lease, who is also the owner or possessor under a license from a third party, of a building adjoining the premises leased by him, and which building he connects" and uses during his term with the premises so leased, as an addition to the latter, does not thereby subject himself to be divested of his ownership or possession at the expiration of his lease. Rights of possession and ownership are not thus acquired or lost. Such a case was never heard of; although formerly, as now, men have taken leases of adjacent buildings from different landlords, and for convenience or business purposes, have connected them by doorways, and used the one as an appurtenance of the other, or have hired a *206 house of one man, and a garden, as appurtenant to it, from another.
The written paper, styled a “permit,” which was given to the defendant by the street commissioner has none of the elements necessary-to constitute a grant of an easement. It has no witness, acknowledgment or seal, and does not even purport to have been executed by, or by authority of, the corporation of the city. It is amere license, or, as it calls itself, “a permission,” given to the defendant personally, to build a vault in Mercer street, in the rear of Nos. 539 and 541 Broadway. Possibly, and indeed probably, it was issued to him, because he was in possession of the building then being erected on lots 539 and 541, except for such possession, he could not have obtained the license. But that does not concern the plaintiff.' If the city was the owner, in fee, of the land covered by the street, there can be no good reason why it might not use or permit others to use, any portion of its land beneath the surface of the street, to the same extent and in like manner as an individual may use or dispose of his own property. The corporation, certainly, was under no obligation to give its license at all; but had a perfect right to grant such permission to any person, whether the= owner of a contiguous building or not, and for any purpose not inconsistent with its duty to the public, or with the rights of the holders of adjacent lands. The license or “permit” of the street commissioner, therefore; conferred no right whatever upon the plaintiff which entitles him, in this action, to recover the possession of the premises claimed by him.
Nor, if we are at liberty here to consider the claim of the plaintiff, as resting upon any principles of equity, does he occupy a' better position. If the vault in question prevents his obtaining water or gas from the street mains, or if its continuance there, in the possession of the defendant, obstructs the use of his own premises, he may, in a proper action, have the nuisance abated. But no such fact appears in this case, and we may, therefore assume that he has sus *207 tained no injury. The real and ultimate question in the case is, whether the plaintiff ought to recover from the defendant the possession of the premises without paying any consideration therefor. As'the jury have found that the vault was not a necessary or customary addition to buildings of the character erected by him, it may be assumed that he was at liberty to refuse to pay for and take it, or at his option, under the offer of the defendant to have it included in the arbitration; where its real value to him, whether much or little, as an appurtenance to the building, could have been estimated and appraised.’ That it was of some value when used in connection with the house is apparent from the finding of the jury in that regard; and I see no equitable reason why the plaintiff should be permitted to oust the defendant of his possession without payment of that value.
The judgment should be reversed, with costs, and a new trial directed.