Ely agt. Campbell.

---

## SUPREME COURT.

Smith Ely, Jr., mayor of the city of New York and others, agt. Allan Campbell, commissioner of public works and another.

*Unauthorized obstructions on streets and sidewalks — Nuisance.*

Streets which include sidewalks are for the use of the public at large. Any obstruction erected on the streets or sidewalks without the sanction of the legislature is a nuisance.

A local municipal corporation cannot give a valid permission to any one to occupy the streets or sidewalks with continuing erections or other obstructions without express power conferred by statute.

The municipal legislature of the city of New York has no power to authorize the occupation of the streets and sidewalks, in the neighbor-

hood of the markets, with stands and booths to be kept and maintained continuously at all hours of the day.

It is the duty of the commissioner of public works to remove all illegal obstructions placed upon the streets and sidewalks.

*Special Term, August,* 1879.

MOTION to continue an injunction.

*Elliot Sanford* and *I. S. Lawrence,* for plaintiff.

*W. C. Whitney,* corporation counsel, and *Geo. R. Andrews,* for defendants.

VAN VORST, *J.* — The principal matter to be decided upon this motion, which is one for the continuance of an injunction, is as to the right of the superintendent of markets to grant permits or licenses to persons to construct and maintain stands and booths upon the sidewalks of the streets adjacent to Washington market.

The papers before me show that several such stands occupy considerable portions of the sidewalk on the south side of Vesey street, both above and below Greenwich street, as, also, the sidewalks of Greenwich street, and are maintained by their occupants for the purposes of trade under permits from the clerk or superintendent of the markets.

These structures are obstructions on the sidewalks which it is the duty of the defendant, the commissioner of public works, to remove, unless they are lawfully there.

It is claimed on the behalf of the plaintiffs that, under the municipal ordinances, the clerk of the markets may lawfully grant permits to persons so to use the sidewalks.

Streets which include the sidewalks are for the public at large.

The legislature of the state, representing that public, has authority over all public ways and places. It may authorize acts to be done, or legalize obstructions upon them, which would otherwise be deemed a nuisance.

The legislature instead of authorizing the act directly may allow it to be authorized by the municipal authority.

A building or other structure of a like nature erected upon a street without the sanction of the legislature is a nuisance, and the local corporate authority of a place cannot give a valid permission thus to occupy streets without express power to this end conferred on them by charter or statute (*Dillon on Municipal Corporations, secs.* 518–521, *sec.* 316).

In *Hoffman's Estates and Rights of the Corporation of New York* (*pages* 403, 404) the learned author refers to the case of *Allerton* agt. *Delevan*, decided in the supreme court in 1861, in regard to a stand near Washington market, in which it was said:

" The stall in question is in one of the public streets of the city. It is out of the power of the corporation, even by the most solemn act of which it is capable, to confer upon any one the legal right to it for a day."

And *St. John* agt. *The Mayor, &c., &c., of New York* (3 *Bos.*, 484) holds that the municipal corporation, although authorized to have and keep such and so many markets, at such and so many places within its corporate limits, as shall from time to time be established by the common council, cannot erect nor allow markets to be erected and occupied in the public streets of the city (*State* agt. *Laverack*, 34 *N. J.*, 201).

Any permanent or habitual obstruction of a street, without authority of law, may fairly be said to be a nuisance. The public is entitled to the full and free use of all the territory embraced within the limits of a street or highway, in its full length and breadth, and every individual has a right to travel over any part of the same ( *Wood on Nuisances, sec.* 252).

It is scarcely necessary to add that these statements are qualified by the right in the legislature alone to authorize obstructions permanent or continuing, and do not exclude such interruptions in the use of the streets by the public as are necessitated by the erection and alteration of buildings fronting on the street, and the occupation of the same with materials for

the purpose, and other necessary and temporary occasions. Every obstruction of a street or highway is not necessarily a nuisance, or objectionable; but if unreasonably continued, or without direct legal right, it becomes such (*Knox* agt. *The Mayor*, &c., 55 *Barb.*, 404; *Davis* agt. *The Mayor*, &c., 14 *N. Y.*, 506).

The latter case decides, in direct terms, that any unauthorized continued obstruction of a public highway or street is a public nuisance (*Lawrence* agt. *The Mayor*, &c., *of N. Y.*, 2 *Barb.*, 577). Reference is made by the learned counsel. for the plaintiffs to the ancient charters of the city, as the foundation of a right in the municipal legislature thus to authorize the occupation of the streets in the vicinity of the markets.

An examination of these charters discloses no such right.

But whatever there is in these charters inconsistent with, or opposed to, subsequent legislation on this subject, must be considered as repealed (*Laws of* 1873, *chap.* 335, *sec.* 119).

It is also claimed that the municipal ordinances of 1866 confer such rights.

But, as already observed, no municipal ordinance or regulation inconsistent with the law of the state can give such right. These ordinances, among other things, declares that it shall be the duty of the clerks of the market to assign and set apart. certain parts of the streets, at or near the said public markets, for the purposes of exposing for sale and selling garden produce, etc. (*Chap.* 35, *article* 2, *sec.* 8; *see, also, article* 4, *sec.* 35).

But these ordinances and regulations do not necessarily authorize the streets, or any part of them, to be occupied with stands or booths to be kept and continually maintained at all hours of the day. The act to reorganize the local government of the city of New York, passed April 30, 1873 (*chap.* 335, *sec.* 17), confers upon the municipal legislature the power to pass ordinances to regulate traffic and sales in the streets, highways, roads and public places, and to regulate the use of sidewalks (*Subs.* 1 *and* 2).

Ely agt. Campbell.

But subdivision 4 also empowers the aldermen to prevent encroachments upon and obstructions to the streets, &c., and to authorize and empower the commissioner of public works to remove the same, but it adds these emphatic words :.

" They shall have no power to authorize the placing or continuing of any encroachment or obstruction upon: any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building, on a lot opposite to the same." With this exception the legislature has reserved to itself all power over the subject..

I regard this expression of the legislature as clearly against any right in the municipal board, or any of its officers or agents, to authorize the occupation of the streets and sidewalks with obstructions and encroachments of the character of those disclosed in this action. , If the ordinances of 1866 allowed such encroachments and erections, they were *ultra vires*, and in any event are rendered nugatory by the act of the legislature above mentioned.

It is true that the ordinances "*in force*" in 1870 were revived and continued in force by section 119 of the act of 1873, but in view of the express prohibitions against the exercise of any powers to authorize encroachments and obstructions to the streets, except for the purposes mentioned, they cannot be interposed as a justification for the continuance of the obstructions and encroachments through the stands and booths in question.

Section 70 of the act of 1873 declares that "it shall be the duty of the commissioner of public works to remove all obstructions now existing, or which may hereafter be placed upon any street or sidewalk." And subdivision 8 of section 71 created in the "department of works" a bureau for the removal of incumbrances on the streets or sidewalks, the chief officer of which shall be called the superintendent of incumbrances, to whom all complaints shall be made and by whom such incumbrances shall be removed.

The papers show that complaints have been made to this

bureau in the department of works of the erections in question as obstructions.

The sidewalks on Vesey street are not wide. Some of these stands are from six to eight feet in length and occupy some two feet of the sidewalk, and extend over the curbs and encroach upon the carriageway, in some instances, from two to four feet. Others are located at the corners of the streets, interfering not only with travel on the sidewalks, but impeding the movements of vehicles.

They occupy these positions at all hours of the day, and are used for the vending of meats, poultry and other articles.

The above facts appear by the affidavits of the superintendent of the bureau, in the department of works having oversight of incumbrances, and others, as, also, complaints proceeding from storekeepers on the street, ready access to whose places of business is hindered, and from persons traveling over the sidewalk and carriageway and others who are obstructed.

It is made the duty of the commissioner of works to remove these obstructions, and this, notwithstanding the fact that he has not been requested by the board of aldermen to take such action.

It is true, as appears above, that it is made a duty of the board of aldermen to order the removal of obstructions from the sidewalks and streets; but its omission to do so should not paralyze the action of the commissioner. He has a duty independent of the aldermen in this regard.

The commissioners of the sinking fund claim that the removal of these stands and booths from the streets will deprive them of revenues which they are entitled to receive and apply to the payment of the city debt.

By chapter 9, article 1, subdivision 8 of the ordinances of 1866, the proceeds " for market fees and market rents " are pledged to the sinking fund.

The market fees and rents, properly so-called, are not interfered with by the proposed action of the commissioner of public works.

It cannot be said to be an impairment of these revenues if the rents which are sought to be collected for the use of stands and booths on the public streets, which the municipal board has no legal right to authorize, are cut off.

The motion for the continuance of the injunction should be denied.