EDWIN W. HALL, Appellant, v. THE WHITEHALL WATER POWER COMPANY, Limited, Respondent.

At a foreclosure sale, made in 1876, the mortgaged premises were sold in parcels; H., plaintiff's grantor, became the purchaser of a lot, being part of what was known as the " barn lot," in the village of W., which was described in the referee's deed as bounded " on the west by Wood creek * * * on the east by William street, the lot hereby conveyed being fifty-five feet in length along William street, from and off the north end of said barn lot, and about thirty feet in width from Wood creek to William street." The barn lot was a strip of land lying between Wood creek and William street; the distance from the edge of the bank of the creek to William street was about thirty feet. It was conveyed subject to the mortgage in 1863 by a description, the east and west boundaries in which were similar to those above quoted. At that time, and for several years thereafter, it was used as the site of a barn. The bank of the creek was a natural wall of stone, the top of which was from twelve to fifteen feet above high-water mark. The water power of the creek was then, and had, for many years, been used to run a factory and mill situate north of and adjoining the barn lot; a dam being built across the creek at the north end of the " barn lot," which set back the water opposite that lot so as to deprive it of any fall. In 1864 the dam was carried away, and in 1875, H., then the lessee of that portion of the barn lot subsequently conveyed to him, undertook to use the water power opposite his lot ; the foreclosure suit was then pending. At the foreclosure sale, before H. purchased, other parts of the mortgaged premises " with all the waters and land under the waters of Wood creek " were sold by the referee to other parties. In an action to

restrain defendant, who claimed under the deed given by the referee on the sale last mentioned, from building and maintaining a dam on the site of the old one, *held*, that in view of the location and physical condition of the property, its history, and the definite specification of the dimensions of the plot conveyed to H., the intention was clear to convey, and H. only took title to the strip of upland between the creek and the street ; and he acquired no right in the land under the waters of the creek, or in the water power.

(Argued June 4, 1886 ; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made December 27, 1884, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendant from building a dam upon Wood creek, in the village of Whitehall, and to compel the removal of its erections and for damages.

The plaintiff claimed title to a small lot in the village of ·Whitehall, being the northern fifty-five feet of a parcel known as the " Phœnix barn lot," which parcel is described, in a deed thereof from John H. Boyd and wife to Ami D. Gibbs, as "᠂bounded south by James Greenough's lot ; west by Wood creek ; north by the axe-helve shop lot ; east by Williams street, being one hundred and eighty-five feet on Williams street, and about thirty feet wide from Williams street to Wood creek." The bank of Wood creek, along this parcel, is a natural wall or ledge of stone twelve to fifteen feet high above high-water mark. The plaintiff claims under a conveyance from one Hancock, who obtained his title by purchase at a foreclosure sale, upon the foreclosure of certain mortgages. These mortgages covered twenty-five acres, known as the " mill lot," of which this " barn lot " was a part, and the lien thereof went back to 1822. It was created as follows : March 21, 1822, Jonathan Steele and others gave a mortgage of the " mill lot " to John Williams to secure purchase-money. About 1841, Williams became the owner of two mortgages upon the same premises, given by John H. Boyd.

He afterward commenced proceedings to foreclose these mortgages and, by authority of a decree of the Supreme Court, in 1855, Josiah Hart took title to the entire premises, as trustee for Boyd and those claiming under him, and gave a mortgage back to Williams to secure the balance then due upon the former mortgages, whereby the lien of Hart's mortgage extended back to 1822.

Defendant claimed under a deed given on a purchase at the same foreclosure sale of the land adjacent to and north of the barn lot, " with all the water and lands under the water of Wood creek." The further material facts are stated in the opinion.

*Esek Cowen* for appellant. The sale of the Phœnix barn lot to James D. Hancock, with a description bounding it on the west by Wood creek, conveyed the west side of the creek, to the center thereof, notwithstanding the prior attempt of the referee to sell all the land under water, with lot A. (*Hopkins* v. *Wooley*, 81 N. Y. 77.) The referee had no power to sell contrary to the judgment, and when he did so, his acts were unauthorized and void as to any one prejudiced by such action. (*De Forest* v. *Leete*, 16 Johns. 122.) An attorney's authority to act for his client ends with the judgment, when it is against his client. (*Lusk* v. *Hastings*, 1 Hill, 686 ; *Dugan* v. *Rooney*, 38 How. 121.) After securing a legal or equitable right for his client in the judgment, an attorney cannot give up that right without his client's consent. (*Quinn* v. *Lloyd*, 36 How. 398 ; *Shaw* v. *Kidder*, 2 id. 224 ; *Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y. 665.) An easement over mortgaged premises may be cut off by making the owners parties to the foreclosure. (*Parker* v. *Rochester & Syracuse R. R. Co.*, 17 N. Y. 292, 297.) So far as mere legal rights are concerned, upon a bill of foreclosure, the only proper parties to the suit are the mortgagor and the mortgagee, and those who have acquired rights under them, subsequent to the mortgage. And the mortgagee has no right to make one who claims adversely to the title of the mortgagor, and prior to the mort-

gage, a party defendant. (*Eagle Fire Ins. Co.* v. *Lent,* 6 Paige, 637; *Corning* v. *Smith,* 6 N. Y. 84.) A person claiming under the mortgagor, prior to the mortgage, is a proper party, and the question of priority could be tried in the foreclosure suit. (*Brown* v. *Volkening,* 64 N. Y. 76.) A purchaser on a foreclosure obtains the same title that the mortgagee would obtain had he taken possession of the property and foreclosed the equity of redemption. (2 R. S. 192, § 158.) He takes the title which the mortgagor had before he gave the mortgage. (*Parker* v. *Rochester & Syracuse R. R. Co.,* 17 N. Y. 287; *Smith* v. *Gardner,* 42 Barb. 366; *Butler* v. *Viele,* 44 id. 166.) The defendant as assignee of the mortgage can only hold the title which the mortgage gave to Williams, prior to the foreclosure, and that cannot include an easement which was not in existence at the date of the mortgage. (*Watson* v. *Spence,* 20 Wend. 206; *Strong* v. *Dollner,* 2 Sandf. 444.) The interest of the plaintiff was such as a court of equity will protect by injunction. (Angell on Water-Courses, § 449; *Webb* v. *Portland Manufacturing Co.,* 3 Sumner, 189; *Knapp* v. *Douglas Axe Co.,* 13 Allen, 1; *Corning* v. *Troy Iron & Nail Factory,* 39 Barb. 311; 34 id. 492; 40 N. Y. 191.)

*Richard L. Hand* for respondent. The decree condemned the entire property to sale. The bed of the creek and all of the water power and privileges covered by the mortgages had been in fact sold to Miss Williams, before any thing was sold to Hancock. And her purchase included the title and interests of Cozzens, as he was not in possession when *lis pendens* was filed and his deed was not recorded until years after the sale. (Code of Pro., § 132.) *Caveat emptor* applies with especial force to judicial sales. (*Riggs* v. *Pursell,* 66 N. Y. 193; *Clute* v. *Emmerich,* 99 id. 342; *Neal* v. *Gillaspy,* 26 Am. Rep. 38.) These sales and conveyances having been confirmed by the court, and no application made to be relieved from the purchase, the conveyance cannot be attacked in this action. (*Story* v. *Hamilton,* 86 N. Y. 428.) If the plaintiff, or his grantor,

had any grounds of complaint, the remedy could only be sought in the foreclosure suit. (Jones on Mortgages, § 1668; *Van Vleck* v. *Clark*, 38 Barb. 316; *McCotter* v. *Jay*, 30 N. Y. 80; *Smith* v. *Am. Life Ins. Co.*, Clarke, 307; *Bennett* v. *Bagley*, 22 Hun, 408; *Leavitt* v. *Palmer*, 3 N. Y. 19, 38.) The attorneys had authority to modify the order of sale. (*Newberry* v. *Lee*, 3 Hill, 523; *Corning* v. *Southland*, id. 552; *Gorham* v. *Gale*, 7 Cow. 739.) The true construction of the plaintiff's deed, as matter of law, limits him to high-water mark and does not convey any portion of the bed of the stream or water power. (*Higinbotham* v. *Stoddard*, 72 N. Y. 94; *Marvin* v. *Univ'l Life Ins. Co.*, 85 id. 278; *Gillespie* v. *Torrance*, 4 Bosw. 36; 25 N. Y. 306.) By force of the original conveyance, the grantee and his successors in interest, acquired the right to maintain the flow of water through that canal, to the extent then existing, as against the owners of the rest of the mill-lot and their privies in estate, forever, including the right, necessarily involved, of setting the water back upon the barn lot. (*Huntington* v. *Asher*, 96 N. Y. 604; *Adams* v. *Conover*, 87 id. 422; *Simmons* v. *Cloonan*, 81 id. 557; *Langdon* v. *Mayor, etc.*, 93 id. 129, 148, 152; *Scriver* v. *Smith*, 100 id. 471, 481; *Lampman* v. *Milks*, 21 id. 505; *Townsend* v. *McDonald*, 12 id. 381; 3 Wash. Real Est. 231, 232; *Agricultural Bk.* v. *Rice*, 4 How. [U. S.] 225; *Catlin* v. *Ware*, 9 Mass. 218.) The factory lot and the appurtenant rights were held by paramount title, and could not be affected by the foreclosure, even if there had been any pretense of doing so. (*Emigrant Ind. Savgs. Bk.* v. *Goodman*, 75 N. Y. 127; *Rathbone* v. *Nooney*, 58 id. 463; *Merchants' Bk.* v. *Thompson*, 55 id. 7.) The plaintiff has no standing in a court of equity. He has no valuable interest to protect on any theory of the case, but is a mere trespasser. (*Newton* v. *Russell*, 87 N. Y. 527; *T. & B. R. R. Co.* v. *Boston, etc., R. R. Co.*, 86 id. 107, 123; *Trustees Col. Coll.* v. *Thacher*, 87 id. 311; *Crooke* v. *Flatbush Water Co.*, 27 Hun, 72; *Quackenbush* v. *Van Ripper*, 2 Green's Ch. 350; 29 Am. Dec. 716; *Clinton* v. *Myers*, 46 N. Y. 511.)

RAPALLO, J.  We are of opinion that the plaintiff's grantor, Hancock, took title under his deed only to the strip of upland, thirty feet wide, lying between William street and Wood creek, and that he acquired no rights in the land under the waters of the creek, or in the water power.  This, we think, is the true construction of the deed from the referee in the foreclosure suit to Hancock, in view of the situation of the property and of the circumstances existing at the time of the conveyance and prior thereto.  The description in the deed from the referee is similar to that contained in the deed of the Phœnix barn lot, dated in 1863, from John H. Boyd and wife to Gibbs, under whose lessee, Irwin, Hancock afterward held the premises in dispute until the sale under the foreclosure.  The Phœnix barn lot consisted of a strip of land on the easterly side of Wood creek lying between William street and the bank of the creek, which was precipitous, being a natural wall of stone, the top of which was from twelve to fifteen feet above the surface of Wood creek when the water was high. This strip of land, called the barn lot, was about one hundred and eighty-five feet long and thirty feet wide from William street to the edge of the bank.  It had for many years prior to 1863 been used for a barn site, and was so used for several years thereafter.  No attempt appears to have been ever made by any occupant of the barn lot prior to 1875, to make any use of Wood creek for power or otherwise.  The water power of the creek had been used for a great number of years by a factory and grist-mill, north of and adjoining the barn lot at or near the mouth of the creek.  These establishments were supplied by means of a dam built across the creek at the north end of the barn lot, which dam had stood from 1818 to 1829, and from 1841 until 1864, when it was carried away.  While the dam stood, it set back the water opposite the barn lot so as to deprive it of any fall, and thus, as well as by the natural conformation of the land, the barn lot was entirely separated from the creek and was in fact enjoyed and treated as a separate property.  In 1863, and while the mill and factory were in operation, and the dam was standing, using all the water power of

the stream opposite the barn lot, Boyd and his wife conveyed to Gibbs the lot known as the Phœnix barn lot, by the following description :. " Bounded south by James Greenough's lot, west by Wood creek, north by the Axe Helve Shop lot and east by William street ; the lot hereby conveyed is about one hundred and eighty-five feet on William street, and about thirty feet wide from Wood creek to William street."

Gibbs continued to use the lot exclusively for the purposes of a barn, until 1868, when he leased the same to Irwin. Irwin sub-leased to Baldwin and Perry the southerly portion of the lot, and to James D. Hancock the northerly fifty-five feet thereof. The dam previously existing having been carried away in 1865, Hancock, in 1875, for the first time, undertook to use the water power opposite the portion of the lot occupied by him.

While Hancock was in occupation as lessee, the whole property known as the mill lot was sold under judgment of foreclosure of the Williams mortgage (which was a lien, paramount to the title of Gibbs and his lessees), and at the foreclosure sale, which took place August 31, 1876, Hancock, the grantor of the plaintiff, became the purchaser of the lot in question, and it was conveyed to him by the referee by deed dated September 5, 1876, wherein it was described as " bounded on the north by lot T, on the west by Wood creek, on the south by a lot marked 228, on the east by William street, the lot hereby conveyed being fifty-five feet in length along William street, from and off the north end of said barn lot, and about thirty feet in width from Wood creek to William street."

At the same sale (at which Hancock was present) and before he purchased the lot, other parts of the mortgaged premises, together with " all the waters and land under the water of Wood creek," within the boundaries of the old mill lot, including the land under water and the waters in front of the barn lot, were sold by the referee to parties other than Hancock, but the referee in this action finds that Hancock, at the time of his purchase and of receiving his deed, did not know of this prior sale of the waters in question.

In view of the location and physical condition of the property, its history, and the definite specification of the dimensions of the plot conveyed to Hancock, we think it quite clear that the intention was to convey only the strip of upland, thirty feet wide, lying between the edge of the creek bank and William street, and that the description was not intended to include any part of the waters of Wood creek or any water rights therein. (*Higenbotham* v. *Stoddard*, 72 N. Y. 94.)

These water rights had for a great number of years been enjoyed and used by the owners of the mill property on the north, near the mouth of the creek, and it was not until 1875, just before the foreclosure of the mortgage, that any attempt had been made by the occupants of the barn lot to use the water power, which had become available for the time by reason of the destruction of the old dam, the rebuilding of which, by the defendant, is the matter complained of by the plaintiff in this action.

Without going into the questions as to the defendant's title, and without intending to intimate any doubt in respect to it, we think the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.