## GRAHAM v. STERN et al.

(Supreme Court, Appellate Division, First Department.   May 11, 1900.)

DEEDS—DESCRIPTION—STREETS—FEE IN NEW YORK CITY.

The city of New York conveyed to the grantor of plaintiff's ancestor, G., a block bounded on the north "by a street 60 feet in breadth," and a lot of another number, which was conveyed to G. by the same description. By reason of defects in the city's maps, the title became confused, and G. conveyed to the city the block first conveyed to him, describing it as bounded on the north "by the southerly side of a certain old street," such street never having been improved or opened.   *Held*, that since, under Laws 1793, c. 42 (3 Laws N. Y. 1789–96, p. 436), the fee in the highways of New York City became vested in the corporation of the city of New York, it would not be presumed that G.'s grantor took to the center of the street under the description in his deed; and, it being presumed that G. transferred to the city of New York all interest which he had in such lot, plaintiff acquired no interest in the land laid out and referred to "as the street" abutting such block.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Ejectment by Mary Eliza Graham against Louis Stern and others. From a judgment in favor of defendants, plaintiff appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, INGRAHAM, and McLAUGHLIN, JJ.

John M. Perry, for appellant.

Julius J. Frank, for respondents.

RUMSEY, J.   The action is in ejectment.   At the close of the case the complaint was dismissed by the court, and from the judgment entered upon the dismissal this appeal is taken.   The property sought to be recovered was a plot 50 by 30 feet, near the center of the block now bounded by Eighty-Fourth and Eighty-Fifth streets and Fourth and Madison avenues, in the city of New York.   It appeared by the evidence of the plaintiff that before 1804 the city of New York had title to what were known as the "common lands" of the city.   In establishing a plan of the city, these lands, with others, had been laid out into blocks bounded by streets, which were designated on a map, but never actually opened.   In 1804 it would seem that one McKay was in possession of a block known as "No. 155," and the city conveyed that block to him by a description which bounded it on the west by what is now Fifth avenue, on the east by what is now Fourth avenue and the line between the common lands of New York and the common lands of Harlem, and on the north "by a street 60 feet in breadth between the lot thereby granted and released and lot No. 156."   This street, as has been stated, although designated upon a map, was never actually opened.   The lot was conveyed by the same description, by mesne conveyances, to Dr. Graham, the plaintiff's father, under whom she claims as heir at law.   A plan of the streets of the city was made by the commission created by the act of 1807, but the streets laid out upon that map did not coincide with those laid out by the city in the map of the common lands of the city of New York, by which the block conveyed

to McKay was bounded. The evidence shows that, by reason of the discrepancy between the two maps, not only the location of the streets, but the title to the lands included in the maps, had been very much confused; and, under an agreement between Dr. Graham and the city in 1835, certain lands were conveyed to him, and in return he conveyed to the city what is claimed to be the same premises that had been conveyed to McKay, and of which Graham had become the owner. But the land conveyed to the city by Dr. Graham was not described by the same description as was used in the conveyance to him and McKay. Instead of being bounded on the north "by a street 60 feet in breadth," it was bounded "by the southerly side of a certain old street." It is claimed, however, by the defendants that the premises thus conveyed were intended to be the same premises which had been received by Graham, and that when he conveyed them he intended to convey all that he owned.

It is impossible at this day to determine otherwise than by his deed what land Dr. Graham intended to grant when he made his conveyance to the city. It is quite clear, however, that the words McKay used to establish the north boundary of the premises then conveyed were not sufficient to carry that boundary to the center line of the street. In precise terms he bounded the land by the "side" of the street, and there has never been any question that such a description as that does not convey to the center of the street.

In view of what is fairly to be inferred, that when Dr. Graham conveyed to the city he intended to pass the title to whatever he had received from McKay in return for the premises which the city at the same time conveyed to him, the fact that he bounded the land he conveyed by the side of the street may be considered as tending, at least, to show that he understood at that time the intention of the parties, in using the description they did in the deed to McKay, was to bound that property by the side of the street, and not to pass the title to the center of it. There can be no doubt that ordinarily, when one conveys property bounded "by" a street then actually opened and used, in the absence of any fact to show a contrary intent, the description will be deemed to carry the title to the center of the highway. 3 Washb. Real Prop. (4th Ed.) 420. But that presumption is not a conclusive presumption of law. It is only a presumption of fact, existing because of what is supposed to be the intention of the parties to the transaction, and it is subject to be overruled, and another construction given to the deed, if a contrary intention can fairly be inferred by reference to the situation of the lands and the condition and relations of the parties to them. Mott v. Mott, 68 N. Y. 246; Dunham v. Williams, 37 N. Y. 251, 252; Haberman v. Baker, 128 N. Y. 253, 28 N. E. 370.

This presumption arises from the fact that ordinarily the state, when it takes land for highway purposes, does not take the fee of the property, but only the right to use and occupy the land so taken for the purposes of the highway, leaving the naked fee in the owner from whom the land is taken; and, when that owner conveys land abutting upon the highway, if the fee of the highway did not also pass to his grantee there would be left a strip of land the width of

the highway, as to which the original owner would own the fee, without any rights except to use it as a highway, and the abutting owner, not having the fee, would have no power to enforce his rights against a person who sought to use the highway for any purpose to which it was not properly to be devoted. To obviate this, it has been held that, although the highway was not included in terms in the deed, yet, where land is conveyed bounded by an existing highway, the fee did pass to the abutter; but, where the fee of the land used for the highway is owned by the state, that presumption cannot arise, nor is there any reason for its existence. As is well known, in the city of New York for many years after it ceased to be under Dutch government the fee of the land occupied by the streets was in the state. That continued to be so until 1793, when, by chapter 42 of the Laws of that year (volume 3, Laws N. Y. 1789–96, p. 436), the estate of the people in the highways was transferred to the corporation of the city of New York. From that time the policy of the law has been that, whenever highways were opened in the city, there at once vested in the city the entire fee, and not simply an easement, leaving the fee in the abutting owner. Drake v. Railroad Co., 7 Barb. 508; Story v. Railroad Co., 90 N. Y. 122.

As at the time the conveyance was made to McKay the streets had been designated on a map, with the intention of opening them, there is no reason for a presumption that the city conveyed to the center of the street. If the conveyance was to the center of the street, it would be necessary for the city, when the street was opened, to buy back from McKay or his grantee the fee which it had conveyed to him; and it can hardly be assumed that as the land had been dedicated for a street, and was expected to be laid out for that purpose, and as McKay or his grantee had the right to have the street there for their use, the city conveyed to him the fee of the street, which it would be required to buy back just as soon as the street was opened. For this reason, we think there is no presumption that McKay took the land to the center of the street.

But the rule that, where land is conveyed as bounded by a street, the grantee takes to the center, has not been applied in the city of New York to lands which were bounded by a street which was not yet opened. When that is the situation, it has been held that the title to the proposed street did not pass by the deed, but that the extent of the grant was the side of the street. In re 17th Street, 1 Wend. 262. In that case the question was involved whether a grant of land in the city of New York bounded by the side of a proposed street, not yet opened, passed the title to the center; and the court held that the proposed street was merely a boundary to determine the extent of the lots, and that the lots only extended to the outside of the boundary, and not to the center of the street. That question was again presented in the case of In re Lewis St., 2 Wend. 462, in which the court adhered to the conclusion reached in Re Seventeenth St. The question was again brought to the attention of the courts in the case of City of Buffalo v. Pratt, 131 N. Y. 293, 30 N. E. 233, and the ruling in that regard was approved as applying to lands in the city of New York, and the court stated the distinction

. between conveyances in that city and in other portions of the state where by law or custom the whole title of the highway does not pass to the state, but the fee remains in the abutting owner. We think, therefore, that McKay, by his deed from the city, only took title to the side of the proposed old street, and did not obtain any right to the center thereof; and it follows that when Graham conveyed to the city in 1836, and at the same time received from the city conveyances of other lands, there is a fair inference that he understood that he did at that time convey to the city all that he had received from McKay, and that he made the conveyance knowing that the property conveyed to him by McKay only extended to the side of the street. The result is that no title is shown in the plaintiff in the premises claimed by her, and that the conclusion of the court was correct, and the judgment must be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.

VAN BRUNT, P. J. I dissent. I do not see why the conveyance from the city did not convey all that the city had to the center of the old proposed street. That street was only a map street, never opened, and in no way dedicated to the public use; for although the city took the land, referring to the map upon which this street was laid out, it was never opened or dedicated to the public. I do not see but that the same rule must apply to such a street as to those laid out on a map by a private individual. The rule in this latter class of cases is well settled that, where a boundary is upon a map street, the grant goes to the center of the map street, although the distances would exclude it. The cases which refer to the differences between city streets and highways relate to city streets which have been opened, and the title to the bed of the street acquired by the city for the use of the public.