(34 Misc. Rep. 701.)
### WATSON v. CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County.   May, 1901.)

DEED—CONSTRUCTION—FEE IN STREET.

    A deed described the lot conveyed as bounded on certain streets.   The dimensions of the lot as described corresponded with the dimensions on a map of the tract in the office of the register of the county, with the streets designated and named therein.   *Held*, not to convey the fee of the street to the center, the quantity of land conveyed being stated in the deed, and it appearing that the inclusion of the streets to their centers would increase the amount of land conveyed by nearly one-half, and the grantor subsequently conveying the streets to the town in which the land was located.

Action by Henry R. C. Watson against the City of New York, to determine claim to realty.   Verdict for defendant.

Parsons, Shepard & Ogden (David B. Ogden, of counsel), for plaintiff.

John Whalen, Corp. Counsel (Charles Blandy and E. J. Freedman, of counsel), for defendant.

BLANCHARD, J.   This is an action brought to determine a claim to real property, under Code, § 1638 et seq.   The plaintiff claims title in fee to a lot of ground at the corner of Spring Place and Third, formerly Fordham, avenue, the lot being 20 feet in width on the avenue and 70 feet in depth along Spring Place.   Plaintiff alleges that he is in possession of the property, and had been so for more than a year past.   The defendant admits this, but denies the plaintiff's title, and claims the title in fee.   The action was tried before me at trial term under stipulation that I should direct a verdict in accordance with the conclusion reached.   The facts in connection with the title, so far as they affect the present discussion, are as follows:   In 1848, and for some years prior thereto, Gouverneur Morris owned a large tract of land in Morrisania, of which the lot in controversy forms a part.   On August 10th of that year he filed a map of this tract of land in the office of the register of Westchester county, whereby it appears that the tract was laid out in plots, which were numbered, the streets designated and named; and the dimensions of the plots, as well as the quantity of ground each contained, were stated.   On September 8th of the same year, Gouverneur Morris conveyed, by warranty deed (Liber 131, p. 216), plot No. 142 on that map, to John Rushby, by the following description:

    "The premises hereby conveyed being bounded and described as follows: Southeasterly by Franklin avenue, 387 feet 5 inches; southwesterly by the junction of Franklin and Fordham avenues, 45 feet; westerly by Fordham avenue, 344 feet 5 inches; and northerly by Spring Place, 206 feet,—containing one acre, more or less."

The figures stated in this description correspond with the dimensions given on the map. Such is likewise the case respecting the statement as to the quantity of land conveyed. Spring Place, the northerly boundary of this plot, is shown to be 100 feet in width. Plaintiff contends that by virtue of this deed title in fee to one-half of Spring Place became vested in the grantee therein named, from whom, by mesne conveyances, plaintiff's claim of title arises. Defendant, on the other hand, contends that the title to the fee of the street was not conveyed by virtue of this deed, but remained in the grantor, Morris. The property involved in this suit forms part of Spring Place as it was laid out on this map. Plaintiff's contention is that by the filing of this map by Morris in 1848, Spring Place was dedicated as a public street, but that the fee of the street remained in Morris, and was conveyed to Rushby by the deed from Morris, and thence to plaintiff by a series of transfers. The position assumed by plaintiff as to the effect of the filing of this map does not appear to be assailed by defendant on this submission. By deed dated November 8, 1864, and recorded January 18, 1865 (Liber 556, p. 96), Gouverneur Morris conveyed to the town of Morrisania all the streets, avenues, and places as designated and laid out on the map before referred to, including "Spring Place, 100 feet wide; * * * to have and to hold forever, in trust, nevertheless, for the benefit of the inhabitants of the village of Morrisania, to be held and maintained as a public street and avenue, and for no other purpose whatever." Subsequently Gouverneur Morris was appointed one of the commissioners, under chapter 841 of the Laws of 1868, amended by chapter 183 of the Laws of 1869, to lay out the streets in the town of Morrisania. A map was filed by these commissioners so appointed, upon which map Spring Place was designated as a street 100 feet wide, and located in the same position as on the map filed by Morris in 1848. By chapter 604 of the Laws of 1874, the commissioners of the department of parks of the city of New York were authorized to locate, fix the width, grade, etc., of streets in the locality here under consideration, and the commissioners, by virtue of this act, filed a map, dated August 2, 1878, which changed the width of Spring Place from 100 feet to 60 feet, by narrowing the street 20 feet on each side. The filing of this map by the commissioners forms the basis of the dispute which has resulted in this action, the plaintiff claiming that its effect is to abandon the public use of that portion of Spring Place which was not included within the lines of the street as narrowed. This conclusion seems likewise to have been reached by defendant, as it appears to concede that the result would be that the fee of the 20 feet thus relinquished from the easement of the public use as a street would revert to the owner of the fee, free from such easement. The question, then, to be determined, is, "In whom was the fee of Spring Place vested?" It therefore becomes of supreme importance to ascertain just what land was included in the deed to Rushby in 1848. If plaintiff's contention in that respect is correct, then no property or rights to the fee of the street passed to defendant by the deed to it in 1865, for, in that event, Morris would have

had no title in the street to convey to the town of Morrisania, having parted with it by the Rushby deed in 1848. On the other hand, if Rushby secured no title to the fee of Spring Place by his deed in 1848, then Morris must have had the title when, in 1865, he transferred it to the town of Morrisania. The correct construction, therefore, of the Rushby deed, becomes of vital importance. There can be no question about the general rule of law that a description in a conveyance whereby the property conveyed is bounded by a street as designated and laid down on a map presumptively includes, as between the grantor and grantee, the fee to the center of that street. But, when the contrary intention of the grantor is evidenced by the instrument itself, the general rule stated does not prevail. In all cases it is the intention of the parties which governs (In re Ladue, 118 N. Y. 213, 219, 23 N. E. 465; Holloway v. Delano, 64 Hun, 27, 29, 18 N. Y. Supp. 700), and no particular words or form of expression is necessary to effect this result (Bank v. Nichols, 64 N. Y. 65, 70).

Judge Ingraham, expressing the opinion of the general term of the supreme court of this department, in Holloway v. Delano, supra, says:

"While this presumption is in every case that the grantor does not intend to retain the fee of the soil within the lines of the street, such presumption may be overcome by the use of any terms in describing the property granted, which clearly indicates an intention not to convey the soil of the street;" and, again, that "it is a universal rule that whether a grant of land that is bounded by a highway * * * extends to the center of such highway * * * depends upon the intent of the parties to the grant as manifested by its terms, so that the question as to the true boundary is in all cases one of interpretation of the deed or grant."

What, then, is the proper interpretation of the description employed in the Rushby deed? Had the description employed by Morris in the deed to Rushby simply stated the streets by which the property was bounded, no question could arise as to the exact limitations of the property conveyed; but the description goes further, and states the dimensions of each side with precision and exactness, and also states the quantity of land covered. These, therefore, must be given consideration, for it must be presumed that these facts were made part of the description with an object, and were not mere surplusage. A reference to the map, referred to in the deed, discloses the fact that the dimensions given in the deed correspond with those given on the map as the lengths of the respective sides of plot 142. If it had been intended to include one-half of the streets on which the plot 142 bordered, then it necessarily follows that the dimensions given in the deed must be very materially increased. To illustrate: Instead of the length of the Fordham avenue side from the junction of Fordham and Franklin avenues to Spring Place being 344 feet 5 inches, it should have been 344 feet 5 inches plus 50 feet, half the width of Spring Place and half of the width of the space designated as the junction of the two avenues mentioned, if the construction for which plaintiff contends is to prevail. Again, it was proved upon the trial that, if the land included within one-half of the surrounding streets upon which

plot 142 bordered was included in the quantity of the whole, it would amount to 1½ acres instead of 1 acre, as shown on the map and stated in the deed. It would, therefore, seem as if the language employed in the deed clearly negatives the theory that it was intended thereby to include one-half of Spring Place, and that the lines and distances given on the map and expressed in the deed are incompatible with the inclusion of the bed of the street to the middle line thereof. I must, therefore, conclude that it was not the intention of the grantor, Morris, to convey the fee to one-half of Spring Place. This conclusion seems to be supported by his subsequent actions, as in 1864 he conveyed Spring Place, with other streets, by deed, to the town of Morrisania, to which deed reference has been made hereinbefore, and likewise to a certain extent by the action of the grantee, Rushby, for in August, 1850, he conveyed a part of plot 142 to one Schoepler (Liber 151C, p. 151) by a deed which described the northeasterly boundary as being the southerly line of Spring Place, which was substantially the description used in various mesne conveyances and mortgages down to 1876.

In the case of In re St. Nicholas Terrace, 76 Hun, 209, 27 N. Y. Supp. 765, affirmed in 143 N. Y. 621, 37 N. E. 635, it was held that, where a large tract of land was laid off in numbered city lots fronting on streets and avenues, and conveyances of certain of the lots embraced in said tract were made by the numbers by which they were designated on said map, and followed by a description giving the boundaries by courses and distances, the naked fee of the strip of land designated on the map as a street on which the lots fronted was retained in the original grantor, and that under such conveyances the abutting owners acquired simply the ordinary street easements over this strip. In the case of Tyler v. Hammond, 11 Pick. 193, it was held that, where a deed of land describes it as bounded on a road, but sets forth metes and bounds which plainly exclude the road, no part of the soil of the road passes by the grant. The description in that case was similar to the one now under consideration, and Judge Wilde, in his opinion there, said: "This is a very particular description of the land intended to be conveyed, in respect to which there can be no doubt or uncertainty."

In the case of Higinbotham v. Stoddard, 72 N. Y. 94, 99, there was under consideration a deed which stated the length of each side and the quantity of land contained in the grant. The court there made use of the following language:

"It is entirely clear in the case at bar that the intention was to convey a certain quantity, because that quantity is specified with exactitude, and the distances named only will produce it. The distances and the quantity must be regarded as unimportant if they are not decisive and controlling; and to sanction the construction claimed by the defendant it must be held that a single course, which is manifestly in conflict with these important elements, as well as the explicit declaration that the lot fronts on Madison street, will nullify and render them superfluous, and of no avail, and thus defeat the evident and expressed purpose of the parties as to the area of land which was intended to be conveyed. The authorities are averse to any such construction."

Further support to the conclusion reached is found in the following authorities: Hall v. Water Power Co., 103 N. Y. 129, 136, 8 N.

E. 509; Graham v. Stern, 51 App. Div. 406, 408, 64 N. Y. Supp. 728.

The case of Pollock v. Morris, 51 N. Y. Super. Ct. 112, is strenuously urged by plaintiff as an authority opposed to the views here expressed. True, in that case a deed of Gouverneur Morris was under consideration, and that the property involved fronted on Spring Place, and was described somewhat similarly to the property described in the Morris deed to Rushby; but that case arose under different circumstances, and presented a state of facts for the decision of the court materially differing from the case here under consideration. There the city made no claim to the property. An award was made to unknown owners for property taken in a street-widening proceeding, and the money paid into court, and the contest was made by several claimants, each contending he was the owner of the property taken. There in the description the dimensions are stated "as laid down in said map," but in the case at bar such is not the case. Here the dimensions are stated positively, and without reference to any map. · It does not appear in that case that any proof was given of the increase in area if the description should be held to include the property to the middle of the surrounding streets. In fact, that decision was founded upon other evidence than that here presented upon this trial. Upon the evidence there presented, the court held it to be the intention of Morris to include the fee of Spring Place to the center thereof. The decision in that case cannot be binding in the present case, for here the area and exact measurements of the land conveyed are given, and they preclude the idea that the grantor's intention was to include the land to the center of the surrounding streets, and overcome any presumption that a conveyance of property fronting on a street carries with it the fee to the center of such street.

The town of Morrisania, by virtue of the deed from Morris, was, therefore, vested with the fee of Spring Place, 100 feet wide, subject to the use of the public in the same as a street; and the title of the town of Morrisania became vested by act of the legislature in the mayor, aldermen, and commonalty of the city of New York upon the annexation of Morrisania to the city, and by the Greater New York charter such title became vested in the defendant, the city of New York. Such being the condition of the title to the fee of Spring Place, it does not become necessary for me to consider particularly the effect of the action of the commissioners of public parks in filing a map whereon 20 feet of Spring Place, on each side thereof, appear to have been disregarded, and the street made 60 feet wide instead of 100 feet, as theretofore. At most, such action could only amount to a relinquishment of the public easement over the 20 feet on each side of the street. The city would still have the title, subject, however, to the private easements of the abutting owners. When, in 1895, the commissioners of street improvements of the Twenty-Third and Twenty-Fourth wards filed a map upon which Spring Place was designated as 99 feet 6 inches wide, the public easement over that portion of Spring Place, eliminated from street purposes on the map filed by the commissioners of public parks, was again restored.

Entertaining these views, it follows that, in accordance with the stipulation of counsel before referred to, the verdict should be directed in favor of defendant. Verdict directed accordingly. Thirty days' stay after notice of entry of judgment, and 30 days to make a "case."

Verdict for defendant.