LANDON v. CLARK et al.

(Circuit Court of Appeals, Second Circuit.  February 27, 1917.)

No. 120.

1. JUDGMENT ⬅➡743(2)—MATTERS CONCLUDED—EVIDENCE CONSIDERED.

The judgment of a state court and the evidence in the record on which it was based considered, and *held* not to sustain the allegations of complainant that the title to certain real estate in controversy in the present suit was thereby adjudicated, and became res' judicata as between the parties.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1052, 1253, 1276, 1284.]

2. BOUNDARIES ⬅➡14—WATERS AND WATER COURSES—CONSTRUCTION OF LANGUAGE.

Under the law of New York, a deed which fixes a point in the western boundary of the land conveyed at the place where a ditch empties into a pond, "thence along the east shore of said pond," did not convey any part of the land under the waters of the pond, but the shore line constitutes the boundary.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 102–107.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Thomas Durland Landon against Elizabeth Clark and Mary F. Clark.  Decree for defendants on cross-bill, and complainant appeals.  Affirmed.

The plaintiff is a citizen of the state of New Jersey.  The defendants are citizens of the state of New York.  The plaintiff alleges that he is the owner in fee simple and in possession as sole owner of certain lands and water and lands under water in and under what is known as "Wickham's Pond," in the town of Warwick, in the county of Orange, and state of New York.  He also alleges that the defendants without any right whatsoever claim an interest in the premises.  The plaintiff asks that a decree be entered adjudging that the defendants and each of them have no estate, right, title, or interest whatsoever in the said lands and water and lands under the water, and that the title of plaintiff thereto is good and valid, and the defendants be forever restrained from asserting any claim whatsoever in and to the said lands and water and lands under water as described.

The defendants deny that the plaintiff is or ever has been in possession, and they allege that they themselves are and for more than 30 years last past have been owners in fee and in possession of the property.  They declare that for more than 100 years last past they and their predecessors in title have owned the property in fee, and used, occupied, and held the same.  They ask that a decree be entered denying title in the plaintiffs and establishing title in defendants.

The District Judge dismissed the bill and entered a decree upon the cross-bill.  It adjudges that the plaintiff had no right, title, or interest whatsoever in the premises described, and that the title of defendants to the same is good and valid, and the plaintiff is enjoined and restrained forever from asserting any claim whatsoever in or to any of the said lands and water and lands under water so owned and possessed by the defendants.

The following is the opinion of Learned Hand, District Judge:

This case now comes up upon a new bill and answer of the same sort as that before the Circuit Court of Appeals in 221 Fed. 841, 137 C. C. A. 399. The plaintiff again depends upon the judgment in Clark v. Durland, decided

in the Supreme Court of New York, but adds to his proof the evidence taken in that action, thus seeking to show that the defendant therein, Jesse Durland, had threatened an entry upon the present locus in quo, and that, this entry being undisputed, the complaint could not have been dismissed, except upon the findings in justification which were actually made. Therefore, the plaintiff says, he has at the present trial shown that the findings were necessary to the disposition of the controversy, and, if so, then of course they form a good estoppel. That such evidence is admissible for that purpose, so long as it does not contradict the record, no one disputes. Russell v. Place, 94 U. S. 606, 24 L. Ed. 214. The question therefore arises whether the evidence shows that Jesse Durland actually had threatened entries upon the present locus in quo. The complaint in the state court alleged that the defendant therein had committed trespasses upon "the premises above described," which included both the 8-acre piece and the locus in quo, and that he threatened to continue to do so; in especial that he took ice off the pond in January, 1893, and threatened to continue to do so. These allegations the defendant denied, except as to the cutting of ice at the time laid in the complaint which he justified, and which both sides agree was only upon the 8-acre piece.

Now, it is quite obvious that if Clark sued Durland to enjoin threatened entries upon both the 8-acre piece and the locus in quo, and was beaten, one only of four possible situations could have existed: First, Durland might not have threatened an entry on the 8-acre piece, and might have threatened one on the locus in quo, which entry he justified; second, he might not have threatened an entry on the locus in quo, and might have threatened one on the 8-acre piece which he justified; third, he might not have threatened an entry upon either lot; fourth, he might have threatened an entry on both, and justified as to each. Here it was expressly found that Durland did enter on the 8-acre piece (finding II), which entry he justified (finding I); therefore the first and third possibilities are eliminated. If the fourth possibility was the real one, the plaintiff here wins; if the second was the real one, the judgment is not an estoppel. As the plaintiff has the burden upon that issue, the evidence on the trial must therefore supply the omission in the judgment roll, by eliminating the second possibility and showing that Jesse Durland had in fact threatened an entry on the locus in quo if the plaintiff is to succeed.

That the Clarks interpreted Durland's position as covering both parcels of land appears beyond controversy in the complaint, but the answer traversed the allegations of past trespass and of threatened future trespass, except the entry of the 8th and 9th days of January, 1893, which was concededly on the 8-acre piece. The third article of the answer alleged most vaguely the ownership "of a certain portion of said Wickham's Pond," which would ordinarily be taken to include only so much as was necessary to justify the admitted entry, though it might have been actually meant to include the locus in quo. It is quite clear, therefore, that the cause went to trial upon the issue, among others, whether Durland had entered, and was threatening to enter, the locus in quo. In order that the findings in justification of such an entry may operate as an estoppel, it must appear that the issue of the threatened entry was decided in favor of the Clarks. The only express finding on the subject concerns, not any threatened entry at all, but a past entry upon the 8-acre piece (finding II). While this is not conclusive, it is significant that the Appellate Division (35 App. Div. 312, 55 N. Y. Supp. 14) on appeal from the first judgment expressly declined to consider the interpretation of the deed to the east farm, on the ground that it was not necessary to secure Durland the substance of his rights. The second finding of the decision under discussion, following such declaration, is significant.

Nevertheless the plaintiff is entitled to urge that the evidence shows that Durland was threatening entries upon the locus in quo and that this was not disputed. I agree that it is a fair inference from the evidence that Durland had entered upon the locus in quo in the past to cut ice wherever it became convenient for his icehouse and his tenant's (folio 88), to put boats upon the water (folios 131, 132, 201, 266), which he used for general farm purposes, to fish (folios 265, 283, 286), and to erect and maintain fences down into the water, so that the cattle might drink (folios 267, 275). This evidence is very

fragmentary and elusive in the mouths of the Clarks' witnesses; it is quite clear that to prove the threatened entry they relied upon the testimony of Landy (folios 190–196), who forbade Durland's cutting the ice in January, 1893. Durland's own testimony in his own case is better evidence for the estoppel than anything else I have found, yet after a most careful consideration of it I am left in some doubt whether, before that action was started, he had actually threatened any entry upon the locus in quo. He says: "I was forbidden to cut ice there by the Misses Clark three years ago, at the time this action was begun, for the first time; and if I need it in my business I shall continue to cut ice there until I am legally restrained. I needed the ice that I cut and took from the lake, and I intend to do so so long as I shall need it, and I told Miss Elizabeth Clark I would stop when I got my icehouse filled; and I, in substance, said that I intended to cut ice from the lake as long as I chose to" (folios 287, 288).

It is quite true that he here uses general language, and it is quite likely that he intended to include the whole pond; but it is also not free from doubt. The occasion of the dispute was an entry on the 8-acre piece, and the scope of his claim would naturally be limited to that occasion. If he meant to threaten an entry elsewhere, it can only be by inference from his past practices, which I have shown to include entries on the locus in quo. Yet the past practices are not to be necessarily taken as a measure of what the parties claimed as of right; as friendly neighbors they perhaps did not care to raise such an issue among themselves while the stake remained trifling. To keep boats for ordinary farm uses, or for fishing; to run the fences down into the water; to fill one's own or even one's tenant's icehouse—these are not things over which neighbors would generally raise a point of right. They might be actual trespasses; they might even form by gradual accretion an adverse user, but as they occurred they would ordinarily be tolerated until the matter became contentious. When the contention did arise, and the Clarks forbade Durland from cutting ice in January, 1893, his posture then for the first time was of one who claimed a hostile right and who proposed to continue its exercise. I think that the limit of his claim is to be found in what he then asserted, and that it is doubtful, to say the least, whether he asserted anything more than the right to cut ice as he was cutting it when he was stopped. If it be urged that at least he meant to assert the right to cut ice as he had cut it up till then, and that he had cut it everywhere, I must answer that, if he meant to claim the right to cut on the locus in quo merely because he may have gone there in years of bad crop, the proof of it does not appear, and nowhere in the evidence or the roll is such a fact suggested. I think, therefore, that the plaintiff fails in sustaining the burden of proof that the judgment in the case of Clark v. Durland is an estoppel upon the question here at issue.

The remaining question is whether the plaintiff can sustain his title independently of that judgment. His theory is that the deed executed by the daughters of Henry B. Wisner on May 4, 1863, purported to convey the locus in quo to Thomas E. Durland, from whom he derives his title. This deed proceeds by courses and bounds, "beginning at a cedar stake standing on the east bank of Wickham's Pond" (this stake is easily ascertainable upon the Taylor map, which was put in evidence upon this case); and it proceeds from monument to monument by courses and distances, "to where the said [Roy] ditch empties into Wickham's pond, thence along the east shore of said pond," then giving a series of other metes and bounds, "to the place of beginning." There is no mention in the deed anywhere of the course from the mouth of Roy's ditch across the pond north 88½ degrees west, 59 chains 25 links, which is indicated in the Taylor map; on the contrary, the deed described the north course of the lot as along the east short of the pond, which under principles too familiar for citation does not include any of the lands under water. In this respect the deed is quite different from the deed which conveyed the 8-acre piece, for the important course in that deed read as follows: "Thence across said pond north 11 degrees 57 minutes west, 17 chains 37 links, to a stake." The construction of the deed appears to me not to be open to any doubt. Furthermore, had the deed conveyed the lands claimed

by the plaintiff, it would in any case have been invalid for the greater portion The title of the grantors to Thomas E. Durland came from two sources: First, from their father, Henry B. Wisner, by will; and, second, from their mother, Mary Ann Wisner, who under the name Mary Ann Durland made a conveyance to them on the same day that they conveyed to Thomas E. Durland.

Let us take up these chains of title separately. The title of Henry B. Wisner arose as follows: The commissioners from whom both sides trace their title conveyed the whole pond to John Wisner on June 11, 1766. On September 8th of that year Wisner conveyed to William Wickham. Here there is a break in the title. We find no deed from Wickham to Henry Wisner, but there unquestionably was one executed on March 1, 1799, presumably conveying the east farm, by what description we do not know, except that it was said to contain 100 acres. This deed is recited in the will of Henry Wisner, in a deed by his executors, and in a deed by Bridget Wickham, all of which will be later mentioned. Henry Wisner, the grantee of this deed, made a will on December 19, 1807, which was probated June 13, 1812, by which he devised the old farm on which he lived and also the lot of 100 acres which he had bought of William Wickham, to his son Gabriel Wisner. On October 29, 1817, Henry Wisner's executors made a confirmatory deed to Gabriel Wisner to quiet his title. On February 3, 1835, Gabriel Wisner made a will probated May 20, 1836, devised all his lands in fee to Henry B. Wisner, and it is by virtue of this title that his daughters conveyed to Durland, by a deed excluding the locus in quo, as we have seen.

A complete understanding of the title, however, now requires consideration at this point of the defendants' title, necessarily involved in any case under the cross-bill. They go back to the title of William Wickham, conveyed to him by deed of John Wisner in September, 1766. Wickham's will was executed on November 30, 1812, and was probated on April 23, 1814. He devised all the residue of his estate to his three granddaughters, Frances Amelia Burrell, Carol Wickham Burrell, and Amily Burrell, and the remaining one-half of the residue to his son, George D. Wickham. George D. Wickham, by his will dated January 30, 1838, and probated December 29, 1845, created a power of sale in his executors, who exercised this by deed dated March 8, 1847, conveying to Bridget Wickham "all that tract of land, situated in the town of Warwick aforesaid, called Wickham's Pond, and the lands adjoining the same belonging to the said George D. Wickham at the time of his death." On May 5, 1849, Bridget Wickham conveyed to William F. Clark, the defendants' ancestor, a part of the locus in quo. This deed covers all of the lake northeast of a course described in said deed as follows: "To a stake on the edge of said pond opposite to the old outlet of the same, it being a corner of a tract of land conveyed by William Wickham, deceased, to Henry Wisner, deceased, on the 1st day of March, 1799; thence across said pond north 50 chains west to the mouth of a ditch on the west side of said pond, being a corner of the lots of said Henry W. Berthoff and said Mrs. Wisner." Six months later, on the 26th day of November, 1849, Bridget Wickham conveyed by quitclaim deed to Mary Ann Wisner the rest of the lake.

A fair inference from these two conveyances seems to be that the deed of March 1, 1799, from William Wickham to Henry Wisner, which has now been lost, conveyed to Wisner that portion of the lake southwest of the course mentioned, and that Bridget Wickham's quitclaim deed to Mary Ann Wisner later was intended only by way of confirmation. Obviously, Mary Ann Wisner neither had title nor could have title to any portion of the locus in quo north of that line, and if the deed from the Wisner heirs to Durland were held to include any portion of that it would in any event be void. The plaintiff's contention that the deed from William Wickham to Henry Wisner included any portion of this land not rests wholly in supposition, but in addition is contradicted by what we know of the deed of March 1, 1799, by reference. That portion of the pond between the 8-acre piece and line in Bridget Wickham's deeds remained vested in Mary Ann Wisner, who conveyed it directly to A. Ruggles Holbert on June 1, 1881. A. Ruggles Holbert conveyed it to Elizabeth and Mary F. Clark on December 27, 1892. It follows from this that the

plaintiff's bill must be dismissed, both as regards its claim for an estoppel and as regards the inherent claim to title.

There remains the defendants' cross-bill. The foregoing discussion has shown that the title of Bridget Wickham is vested in the defendants. It has been urged that the conveyances of Bridget Wickham were champertous, because the property was then in the possession of the Wisners; but there is absolutely no warrant for this assumption, and it may be dismissed. There is, however, a defect in Bridget Wickham's title from the fact that the daughters of William Wickham, by his will heretofore mentioned, became coparceners in fee in one-half interest of all the residue of his estate However, one cotenant may file a bill quia timet without joining the rest as parties plaintiff (O'Donnell v. McIntyre, 37 Hun [N. Y.] 615, affirmed 116 N. Y. 663, 22 N. E. 1134; Goldsmith v. Gilliland [C. C.] 24 Fed. 154); and it is therefore unnecessary to consider how far a round century may have cured this defect. I do not mean to be understood as raising any question about it. It is true that, if the question is to be disposed of in this way, it must be on the assumption that the defendants are in possession, since possession is necessary to a bill quia timet. If the suit were in ejectment, the question of joinder would be very serious. Nevertheless, I think that the defendants are in possession so far as any one can have possession of the pond. They have a clear title from the colony, and have never, so far as appears, lost the possession to any one else. The acts of the Durlands did not, in my judgment, whether or not they were trespasses, amount to a taking of possession. Therefore possession will follow the title.

Bill dismissed; decree on cross-bill; costs to defendants.

M. N. Kane, of Warwick, N. Y. (Alton B. Parker and F. Granville Munson, both of New York City, of counsel), for appellant.

Thomas Watts, Elbert N. Oakes, and John Bright, all of Middletown, N. Y., for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. [1] An action was commenced in the Supreme Court of New York in 1893 by the present defendants against the present plaintiff to restrain the latter from trespassing upon Wickham's Pond or Lake. In that action the plaintiffs therein claimed to own the whole pond or lake, and the description set out in that complaint concededly included the whole thereof. The defendants obtained a judgment in their favor, which was reversed in the Appellate Division. 35 App. Div. 312, 55 N. Y. Supp. 14. The claim made upon the appeal that Jesse Durland owned to the center of the pond was not determined at that time by the Appellate Division which in referring to it declared: "But it is not necessary to consider this branch of the question." This eliminated the question of title to the so-called east farm of 159 acres, which was the only part involving the locus in quo here.

The case then went back for a second trial. The trial judge declared that he saw nothing in the case "except the location of this 8·and a fraction acres." This eliminated the present locus in quo, if he was right. The only new evidence given on the second trial was devoted to an attempt to prove title to the 8 and a fraction acres. On the second trial judgment was again in favor of defendant. Another appeal was taken, and the Appellate Division declared that:

"The judgment for the defendant, rendered at Special Term, upon the second trial of this case, which now comes up for review, was required by the views expressed by this court upon the first appeal. * * * The learned judge at

Special Term rightly concluded that the new proofs did not justify a different result from that formerly reached in this court." 104 App. Div. 615, 93 N. Y. Supp. 249.

What that result was has already been pointed out. The Court of Appeals affirmed without opinion. 187 N. Y. 560, 80 N. E. 1107. It was thus established that the acts proven upon the first and second trials in the Supreme Court of New York were not a trespass because they were committed upon 8.7 acres to which the defendant had title. The only issue necessary and essential to the determination of the action was as to the title to that portion of the pond.

Thereafter the present plaintiff, who had been the defendant in the action in the state court, filed a bill quia timet in the United States District Court for the Southern District of New York against the present defendants, who had been the plaintiffs in the suit in the state court, in respect to the premises described in his bill which were the premises described in the bill filed in the suit in the state court, and not merely the 8.7 acres. He relied upon the judgment in the state court and claimed that it was res adjudicata upon the question of title to the locus in quo. He obtained a decree in his favor in the District Court. On appeal to this court that decree was reversed without prejudice. 221 Fed. 841, 137 C. C. A. 399. A rehearing was asked and denied.

Thereupon the plaintiff filed a new bill quia timet in the same court against the same defendants and in respect to the same property. He again relies upon the New York judgment, which he asserts is as to the locus in quo res adjudicata of the title. And in this second suit he has introduced evidence not before the court in the first suit. The evidence presented is that taken on the trial in the New York court and upon which the New York judgment was based. The purpose of bringing this evidence into the case is to show that the defendants in the New York action had threatened an entry upon the present locus in quo, and that, this entry being undisputed, the complaint in that action could not have been dismissed, except upon the findings in justification which were actually made. The District Judge dismissed his bill, filing an opinion in which he carefully considered the testimony and reached the conclusion that the plaintiff failed to sustain the burden of proof that the judgment in the case of Clark v. Durland was an estoppel upon the question here at issue. He also considered whether the plaintiff upon the evidence could sustain his title independently of that judgment and reached the conclusion that he could not. "I think," he says, "that the defendants are in possession so far as any one can have possession of the pond. They have a clear title from the colony, and have never, so far as appears, lost the possession to any one else."

There is nothing in the evidence upon which the judgment in the state court was based, and now presented to this court for the first time, which has served to convince us that the judgment in that action is entitled to be regarded as an estoppel between the parties as to the locus in quo involved in the present suit. We remain of the opinion, announced in the former suit, that that judgment is conclusive only as to the 8.7 acres. We need not traverse again the ground gone over

in the former opinion. We then stated at length the reasons which led us to our conclusion, and we find nothing in the evidence now presented which convinces us that the conclusion we then announced should not now be adhered to. It is sufficient at this time to point out that the complaint in the state court alleged that the defendant had committed trespasses upon the premises described, and that the premises described included the 8.7 acres and the locus in quo, and that he threatened to continue his trespasses on the same. These allegations defendant denied, except as to the cutting of ice at the time laid in the complaint, which he justified, and which both sides agree was only upon the 8.7 acres. If he had title to that tract, it was not necessary, so far as the actual trespasses are concerned, to determine who held title to that portion of the premises not trespassed upon, and which the evidence shows was not held under the same title. The title to the tract not trespassed upon could only have been involved, therefore, if the evidence disclosed that the defendant had threatened to commit trespasses thereon. This the evidence fails to disclose. It appears that on one occasion, when the plaintiff was cutting ice on the 8.7-acre tract, he was forbidden by the defendants to cut ice there, and he testified that he replied that he intended to cut ice from the lake as he chose to.

But this does not show that the plaintiff was threatening to cut ice anywhere upon the lake. On the contrary, if he was at the time cutting on the 8.7 acres to which he held title (and which defendants denied), and if he did not hold title to the locus in quo, we must assume, in the absence of evidence to the contrary, that he was not threatening to do what he had no right to do, and which would be a trespass if done, but that he was proposing to do what he had a right to do—to cut ice on his own tract. Moreover, the allegation in the complaint in the action in the state court was that the defendant Durland had trespassed upon the premises and "threatened to continue such trespass." The evidence shows that the premises he trespassed on were the 8.7 acres; the threat complained of to continue "such trespass" must have, therefore, been a threat to continue to cut on the 8.7 acres. There is no evidence that he "threatened" to cut anywhere else.

[2] In his brief in this court counsel for plaintiff says that the court below seemed to think that the locus in quo and the 8.7 acres are two separate parcels. That such they are is perfectly evident. The title to the 8.7 acres is not derived from the same common source, nor dependent upon the existence of the same facts, as the title to the remaining land. This brings us to consider whether the plaintiff has sustained his title independently of the judgment in the state court.

On May 4, 1863, a deed was made to Thomas E. Durland of what is known as the east farm, a tract of 159 acres. The plaintiff claims through that deed by a chain of title which need not be recited here in detail. A part of the description of that deed is, "thence along the east shore of said pond." The learned counsel for the plaintiff in his argument in this court insisted that the grantee under that deed took to the center of the lake, and in support of that view called attention

to the case of Gouverneur v. National Ice Co., 134 N. Y. 355, 31 N. E. 865, 18 L. R. A. 695, 30 Am. St. Rep. 669. In that case the court declared that the presumption in the state of New York is that lands under the waters of small inland nonnavigable ponds and lakes belong to the proprietors of the adjoining lands, and that the same rule applies in the legal construction of grants of land bounded on them as is applied to conveyances or grants of land bounded on fresh-water streams. It held that, unless restricted by express words or by other facts implying a contrary intent, a conveyance of land adjoining such a lake or pond, describing it as running "to the pond," or to some monument on the land at the water, and thence along the pond to some other monument on the bank, carries the title to the center of the pond.

The decisions of the New York courts as to the title to land in this state are conclusive, and we do not doubt, and, if we did, would be obliged to adhere to, the doctrine announced in the case above cited. It has, however, no application to the facts of this case. In the case now before the court the deed fixes the boundary as "the east shore." And the rule in New York is that where, in a deed, the land is described as bounded on the bank or shore of the stream, the grantee does not take title to the center, but the bank or the shore is the monument, and not the stream. Babcock v. Utter, 1 Abb. Dec. (N. Y.) 27; Child v. Starr, 4 Hill (N. Y.) 369; Halsey v. McCormick, 13 N. Y. 296; Hall v. Whitehall Water Power Co., 103 N. Y. 129, 8 N. E. 509. In this respect the law of New York does not differ from what we understand to be the law elsewhere. See Eng. & Am. Encyc. of Law, volume 4, page 830. It is upon the description in this deed that the plaintiff's claim to the one-half of this pond rests. His claim appears to us to be without merit.

The question of plaintiff's title was very carefully considered by the District Judge, and we see no reason why his conclusion should not be affirmed. He thought that the defendants have a clear title from the colony, and that they have never, so far as appears, lost the possession to any one else. In that opinion and for reasons stated by him we concur.

Decree affirmed, with costs.